**BOARD OF ADJUSTMENT et al. v.
STOVALL et al.**

No. 14931.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 11, 1949.

Rehearing Denied March 11, 1949.

Heard L. Floore, Sam A. Woodward, and R. E. Rouer, all of Forth Worth, for appellant.

Wardlaw & Freeman and M. Hendricks Brown, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

At a former day this appeal was dismissed. Board of Adjustment v. Stovall, Tex.Civ.App., 211 S.W.2d 303. The Supreme Court set aside our order of dismissal and remanded the case to us for decision on the merits. Id., 216 S.W.2d 171.

The City of Fort Worth has in effect a zoning ordinance, enacted under authority of Acts 1927, 40th Leg., ch. 283, p. 424, Articles 1011a–1011j, Vern.Tex.Civ.St. The ordinance provides for a board of adjustment, as authorized by Article 1011g.

Interstate Circuit, Inc., applied to the city building commissioner for a permit to build an outdoor moving picture theater on a designated 18½ acre tract of land. The permit was denied on the ground that most of the tract was zoned for one and two family residences, and not for commercial uses. Interstate Circuit, Inc., appealed to the Board of Adjustment from the action of the building commissioner. The board entered an order granting the permit to build the theater. Nearby property owners carried the matter to the district court by writ of certiorari. Article 1011g. The district court held that the Board of Adjustment was without authority to make the order allowing the theater to be built, and set it aside.

Authority for enacting zoning ordinances is found in the above cited statute. Authority to make general zoning regulations is vested in the legislative body of the city, Art. 1011a, which in the present instance is the City Council of the City of Fort Worth. Art. 1011g authorizes the legislative body of the city to provide for the appointment of a board of adjustment, and that the lat-

ter may "in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained." Reference is made to the statute for a more detailed account of the powers and duties of such a board.

The tract in question contained 18½ acres of land adjacent to East Lancaster Street. It was rectangular in shape, having a frontage of 790 feet on said street, and a depth of 1336 feet back from said street. It had not been subdivided into lots or blocks. Under the terms of the zoning ordinance the portion fronting on East Lancaster Street, to a depth of 200 feet, was designated as a commercial and light industrial district. The remainder of the tract, that is to say, the remaining 1136 feet in depth beginning 200 feet away from the street, was designated as a residence district, in which only one and two family dwelling houses were permitted. According to the finding of the trial court, which is not challenged, the commercial district comprised 18 per cent of the entire tract.

The trial court, in a non-jury trial, filed separate findings of fact and conclusions of law. He found that the tract in question was not a "lot" as contemplated by section (1) of the ordinance hereafter quoted; that the Board of Adjustment did not have any jurisdiction to enter the order under attack; that the relief sought by Interstate Circuit, Inc. amounted in law to a request for a change in zoning of the portion of the tract theretofore zoned as a one and two family district; and that the City Council was the only body which had authority to grant the relief sought by Interstate Circuit, Inc.

Appellant seeks to uphold its grant of a permit to Interstate Circuit, Inc. to build an outdoor theater on the tract of land in question under either or both of the provisions of the Fort Worth zoning ordinance which authorize the Board of Adjustment to do the following:

"(1) To permit the extension of a district where the boundary line of a district divides a lot in a single ownership at the time of the passage of this ordinance.

* * * * * *

"(9) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

■ As was pointed out in our opinion in 211 S.W.2d 303, Interstate Circuit, Inc., did not except to the judgment or appeal from it. If it filed any pleadings in the district court they are not brought here in the transcript, and it has filed no brief nor made any argument on this appeal. We have before us only the brief of the Board of Adjustment. We have carefully examined the return made by the Board of Adjustment in response to the writ of certiorari, and all of the testimony taken at the trial in the district court, and have found nothing in the record which would support a grant of a permit to build the theater on the ground that a literal enforcement of the ordinance would result in unnecessary hardship to the applicant for the permit. The only reference in appellant's brief which can be construed as a suggestion that the permit was or should have been granted under section (9) above quoted is one to the effect that, so far as the zoning regulations were concerned, the applicant could have built its theater within the 200 foot area which had been designated in the zoning ordinance as a commercial zone, but that it needed more land than that for the construction of such a theater. There is nothing in the record to show, nor is there any argument in appellant's brief to the effect, that the owner of the 18½ acre tract would suffer any hardship of any kind if only one and two family dwellings were permitted to be built on the portion thereof designated for such purpose in the zoning ordinance. For statement as to character of proof required to make out a case of unnecessary hardship, see Scaduto v. Town of Bloomfield, 127 N.J.L. 1,

20 A.2d 649, 650. To quote from the opinion:

"In the making of a variance under R.S. 1937, 40:55–39, N.J.S.A. 40:55–39, it is a jurisdictional sine qua non that, due to special conditions, a literal enforcement of the ordinance would result in 'unnecessary hardship.' The essential inquiry is whether in the circumstances the specific application of the general regulation would constitute an unnecessary and unjust invasion of the fundamental right of property. The statutory provision for relief against 'unnecessary hardship' thus ensuing was designed to permit of the reasonable use of the particular property, and thus to guard against an unwarranted interference with the right of private property, i. e., to secure reasonable zoning. This is a quasi-judicial function in essence discretionary, controlled by the policy of the statute and of the ordinance so far as is consistent therewith. And there must be a finding of such jurisdictional prerequisite substantially grounded in competent evidence. The criterion of 'unnecessary hardship' is whether the use restriction, viewing the property in the setting of its environment, is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property. Is the environment such that the lot is not reasonably adapted to a conforming use? It is not per se a sufficient reason for a variation that the nonconforming use is more profitable to the landowner."

From the record as a whole we conclude that the granting of the permit by the Board of Adjustment can be upheld, if at all, only under the terms of section (1) of the ordinance above quoted, that is, the section which permits extension of a district where the boundary line of a district divides a lot in single ownership at the time of the passage of the ordinance.

First to be considered is whether the 18½ acre tract was such a lot as is contemplated by the section of the ordinance above quoted. Appellant and appellees cite numerous authorities in which the term "lot" is defined. It is clear that the term has no generally fixed meaning, and that we must determine its meaning, as used in this ordinance, from the ordinance as a whole and the purposes intended to be accomplished by it. A section of the ordinance sets out definitions of terms therein used, including the terms "lot of record," "lot," "corner lot," "through lot," and "lot lines." The term "lot" is defined as "Land occupied or to be occupied by a building and its accessory buildings, together with such open spaces as are required under this ordinance, and having its principal frontage upon a street or officially approved place." This definition is general in its terms.

The statutes, Arts. 1011a–1011g, and the city ordinance, vest in the legislative body of the city the authority to create a general zoning plan, and the board of adjustment is intended to permit variances or to extend districts in the exceptional case, and then only in such a manner as will be in harmony with the general purpose of the ordinance and in accordance with general or specific rules contained in the ordinance. It is not intended that the board of adjustment shall take over the legislative functions of the governing body of the city. If such ordinance did undertake to confer legislative functions on the board of adjustment it would constitute an invalid delegation of legislative powers.

We have not found a better statement of the rules relating to the power and authority of a board of adjustment than that contained in the opinion of Mr. Justice Hale in Texas Consol. Theatres v. Pittillo, Tex.Civ.App., 204 S.W.2d 396. We adopt all that is said in it as authority for our decision in the case before us. In said case the applicant owned all of a city block. A portion of the block 100 feet in depth from the street was zoned as a community store district, and the remainder of the block as a residential district. The applicant operated a theater in the business zone, and sought from the board of adjustment a permit to operate an automobile parking lot on the portion of the lot which was a residential zone. It was held that the board of adjustment was not legally authorized by the terms of the ordinance to grant the permit. The court declared that if the board of adjustment could extend the business zone over the entire block, it could by

successive applications extend the business zone to other blocks, and thus eventually override and reverse both the letter and spirit of the entire zoning ordinance. We also refer to an excellent discussion of the decision just cited in Vol. 1, page 228, Baylor Law Review.

We have a stronger case here against the authority of the Board to grant the permit sought in the present instance. Here the business zone extends back 200 feet from the street, and covers only 18 per cent of the tract. The effect of the Board's order is to extend the business zone from a depth of 200 feet from the street to a depth of 1336 feet from the street, and to convert 82 per cent of the entire tract, or an area of more than 15 acres, from a residential to a business zone. Resolving every reasonable doubt and indulging every permissible presumption in favor of the validity of the Board's order, we still are driven to the following conclusions: (1) The 18½ acre tract involved here was not a "lot" as contemplated in section (1) of the ordinance above quoted; (2) there is no showing whatever that a literal enforcement of the ordinance would result in unnecessary hardship to the applicant; (3) the grant of the permit in this case to extend the business district over the remaining 15 acres of the tract cannot be viewed as a special exception to the terms of the ordinance, but is, rather, an undertaking by the Board of Adjustment to effect such a change in the zoning regulations as only the governing body of the city could have made by amendment of the zoning ordinance; (4) the grant of said permit was not in harmony with nor in accordance with the general purpose of the ordinance or its general provisions, but, on the contrary, was in direct violation of both the letter and the spirit of the ordinance; (5) The Board was without authority to grant the permit. In any event we hold, under the record before us, that the grant of the permit was an abuse of discretion if it should be said that the Board had discretion to undertake such an extension of a business district as was sought by the applicant.

The judgment of the trial court is affirmed.