Russell C. MOODY et al., Appellants,

v.

CITY OF UNIVERSITY PARK et al., Appellees.

No. 14929.

Court of Civil Appeals of Texas.

Dallas.

April 1, 1955.

Rehearing Denied April 29, 1955.

Morris I. Jaffe and A. C. Scurlock, Dallas, for appellants.

Thompson, Knight, Wright & Simmons, William H. Neary, Pinkney Grissom, Marvin Jay Wise, and Dick P. Wood, Dallas, for appellees.

YOUNG, Justice.

This proceeding was instituted by Moody and nine other resident owners of Lots in University Heights No. 6, an Addition to the City of University Park, pursuant to terms of Art. 1011g, V.A.C.S., against that municipality, its Board of Adjustment, and Neiman-Marcus Company, seeking to set aside a permit granted the latter party for development of a free parking area on Lots 10 through 18, Block 78, University Heights No. 6 Annex, an Addition, in which A. C. Scurlock, another Lot owner, intervened.

On conclusion of the District Court trial, inclusive of evidence adduced before the Board of Adjustment, Judge Hughes discharged the jury and affirmed the action of that agency; filing findings of fact and conclusions of law at instance of plaintiffs; the court overruling exceptions thereto, also their request for additional findings. To such judgment and rulings, the complaining property owners have duly prosecuted an appeal; in general, charging arbitrary, capricious, and unauthorized action on part of the Board in grant of the permit; disqualification of certain Board members; insufficiency of showing to justify a permit, especially of "hardship"; and invalidity of ordinance as delegating legislative powers

to such municipal Board. Background of the entire controversy should be first detailed briefly.

The City of University Park is a municipal corporation with revised comprehensive zoning ordinance of date Oct. 20, 1952, under authority of Arts. 1011a through g, V.A.C.S.; also having a duly appointed Board of Adjustment comprised of Ed S. Wesson, Bascom Thomas, Jr., M. B. Lowe, John C. Harris, and Edwin M. Jacobs. Section XVI of the ordinance relates to setup and powers of the Board incident to enforcement of zoning regulations; providing for public hearings, etc., in connection with the following: "2. Variances: The Board of Adjustment shall have the power to authorize upon appeal in specific cases such variance from the terms of this Ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this Ordinance will result in unnecessary hardship, and so that the spirit of this Ordinance shall be observed, and substantial justice done. 3. Special exceptions: The Board of Adjustment shall have the power in each specific case after having held a public hearing, when in its judgment it will not be contrary to the public interest and the appropriate use of the neighboring property will not be substantially injured, and to relieve or prevent unnecessary hardship, to authorize the following designated special exceptions to the provisions of this Ordinance: * * * (h) Permit the location in any District, except an 'A' or 'B' District, of a free parking area for passenger motor vehicles, and commercial vehicles belonging to the owner of the premises or business, in connection with any use permitted in any District; provided such parking area complies with the specifications set forth in subsection 'i' hereof." Subsection (i) requires that: "(1.) Such parking area shall be used exclusively for the parking of passenger motor vehicles, and commercial vehicles belonging to the owner of the premises or business, and for no other use; (2) Such Parking Area shall be a free parking area for temporary parking as distinguished from over-night storage; (3) That portion of the parking area used for the parking of motor vehicles shall be hard surfaced either with concrete or paving asphalt; (4) No building, nor advertising sign shall be erected or placed on such parking area; except that the owner of such lot may identify it by a sign stating: 'This lot provided for parking by (Name of Owner).' (5) Such requirements as to lighting, screening walls or shrubs, entrances or exits, sidewalks, drainage, and other similar matters for the protection of neighboring property as may be prescribed by the Board of Adjustment and approved by the City Engineer."

Appellee City, a community "primarily" residential (Ordinance, Sec. I, par. A), is located to the north of the City of Dallas proper. Its layout, however, includes a large suburban shopping center beginning at the southeast corner of Preston Road and Northwest Highway intersection, two wide thoroughfares and main arteries of traffic traversing Dallas County; Preston Road leading to the North and Northwest Highway running, generally, east and west. Said shopping district, known as "Preston Center" or "Varsity Village," extends over two City blocks, bounded on west and north by the named highways, on the east by Pickwick Lane, with south boundary at Wentwood Drive; the district intersected by Villanova Street east and west. Neiman-Marcus Company, a large merchandising establishment, lies on the southwest side of Preston Center, facing Preston Road, also on Villanova and extends to Wentwood Drive on the south. Across Wentwood Drive is the proposed parking area (north one-half of Block 78), separated by an alley from south half of the same Block, where a residential area begins. Along Preston Road to the west of the property here involved and in the City of Dallas is located another extensive business district. The following map accurately portrays the area in question for which Neiman-Marcus has been issued a permit

by appellee City for development of a free motor park. (See Footnote 1).

Neiman-Marcus Company completed ·its store in Preston Center in the fall of 1951; applying to the Board of Adjustment for a permit in July, 1953 to use said north half of Block 78 as a free parking area for motor vehicles; and after successive hearings, examination of witnesses pro and con, introduction of many documents and exhibits, the application was granted on Oct. 6, conditioned upon the following requirements: "(1) The parking area shall be used only for the parking of motor vehicles. (2) It shall be used as a free parking area without overnight storage. (3) The area must be hard-surfaced by Neiman-Marcus. (4) No advertising signs are permitted, except the sign stating 'This lot provided for parking by Neiman-Marcus.' (5) The area shall be lighted with light fixtures facing downward and of a height not greater than the screening walls. (6) The Neiman-Marcus Company shall construct a screening wall of brick or stone parallel with the alley and parallel to Pickwick Lane. (7) Neiman-Marcus shall pave the alley immediately behind this property at its own expense and construct three (3) driveways at designated locations into the property. (8) No cars· shall be parked within 30 feet of Wentwood .Drive. (9) Neiman-Marcus must construct sidewalks adjacent to Wentwood Drive, Pickwick Lane and Preston Road and landscape the property outside the screening wall on the alley and along Pickwick Lane with grass, shrubs and trees. (10) Neiman-Marcus was required to provide adequate drainage on the lot to remove surface water and to obtain the approval of the City Engineer of their satisfactory compliance with all of these restrictions before being permitted to use the lot." This property was acquired by Neiman-Marcus in 1950, subject to deed restrictions (two-story single family or duplex residences).

Appellants first argue invalidity of the Board order in this a discretionary matter, in that three members thereof were disqualified from serving on account of "personal relationship" with the permittee Neiman-Marcus—connections not known at time of the Board hearings. The accusatory facts are these: Ed S. Wesson, Chairman of the Board of Adjustment, was in the business of insurance. In 1942 when acquiring the agency it was inclusive of a policy· with Neiman-Marcus and in 1951 he had written a policy on the contents of their Preston Center Store, an item still outstanding. Over a period of nine years his commissions on such insurance had amounted to $109. The wife of Magnus B. Lowe, a Board member and its Secretary, became a saleslady for Neiman-Marcus on opening of the store, continuing as such employee at all material dates, salary some $190 per month, with same regularly deposited in their joint bank account. Ed Jacobs, another member of the Board was "either a third or fourth cousin of Stanley Marcus"; all above named parties having voted for issuance of permit.

 Neither the statute, Art. 1011g, nor Ordinance (Sec. XVI) sets up any test for disqualification of administrative officials or procedure for recusation of one and substitution of another to hear a particular case. It has been indicated in Riggins v. Richards, 97 Tex. 229, 77 S.W. 946, and State ex rel. La Crosse v. Averill, Tex. Civ.App., 110 S.W.2d 1173, (writ ref.) that the standard of disqualification in such cases might be referable to that of a judge

---

1. This map also shows adjacent lots of resident owners; those in favor of issuance of the disputed permit marked by dingonal lines, those opposed .(inclusive of all appellants) by horizontal lines. In 1948 the then owners of this· property (north one-half òf Block 78), fronting on Wentwood Drive from Preston Road to Pickwick Lane, had filed a Plat of record describing same as "University Heights No. 6 Annex", an Addition to the City of University Park, said Plat indicative of. a division into nine lots but none of these lots were ever sold to individual owners; remaining in a single tract of land and presently owned by Neiman-Marcus Company. It is now zoned for "C" uses -two-story brick veneer, single family or duplex houses.

of court. Appellees have here assumed such to be the applicable test; in which connection our State Constitution, Art. 5, sec. 11, Vernon's Ann.St., provides: "No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case. * * *" These inhibitions have been held mandatory and exclusive; "that is, they specify all the circumstances which forbid a judge to sit." 25 T.J., p. 263. "Accordingly, to be disqualified for interest, the judge must, by the judgment in the case, gain or lose something, the value of which may be estimated." 25 T.J., p. 269. " 'Moreover, "the liability of pecuniary gain or relief to the judge must occur upon the event of the suit, not result remotely, in the future, from the general operation of law upon the status fixed by the decision." 12 Amer. & Eng.Enc.Law, p. 45 et seq.' Ex parte Alabama State Bar Association, 92 Ala. 113, 8 So. 768, 770, 12 L.R.A. [134] 136; Foreman v. [Town of] Marianna, 43 Ark. 324; Long v. Watts, 183 N.C. 99, 110 S.E. 765, 22 A.L.R. [277] 279." Love v. Wilcox, 119 Tex. 256, 28 S.W.2d 515, 519, 70 A.L.R. 1484.

■ Manifestly, the "personal relationship" above pictured of certain Board members to the Company permittee, does not constitute a disqualification under these well established principles of law. Appellants stress the fact that Messrs. Wesson and Lowe made no disclosure of above connections prior to the hearing or offer of disqualification, but such contention is of no consequence, these gentlemen obviously having no direct interest in the outcome of this suit; their interest being characterized in law as too remote—in no sense tantamount to a disqualification. In County Court of Taylor County v. City of Grafton, 77 W.Va. 84, 86 S.E. 924, 925, a City ordinance vacating a street for railroad trackage was attacked as invalid because members of the City Council voting for the measure and whose votes were necessary to its passage, were employees of the railroad company; the Appellate Court holding: "Three members of the council, who voted for the ordinance, and whose votes were necessary to its passage, were employes of the railroad company. As such, they were not interested in the question on which they voted, nor in any sense disqualified to act upon it. Their interest did not extend beyond their salaries or wages. They had no interest in the railroad company, nor in the privileges granted to it." And appellants do not contend that the Jacobs-Marcus family relationship was within any prohibited degree.

■ Appellants stoutly maintain that the Board grant of permit was arbitrary and an abuse of discretion under the facts as a whole; the permittee not demonstrating a right thereto under the applicable ordinance and statute, with especial reference to its duty of establishing "unnecessary hardship." Two issues are thus impliedly raised in this second point; it being appellants' burden to show unreasonable and capricious action of the Board on the one hand, and upon applicant on the other, to show justification for permit under the required criteria of the Ordinance, paragraph 3, that "it will not be contrary to the public interest, and the appropriate use of the neighboring property will not be substantially injured, and to relieve or prevent unnecessary hardship, * * *."

■ First to be noted is the distinction between the Variance and Special Exception provisions of both statute and ordinance, generally pointed out in Harrington v. Board of Adjustment, Tex.Civ.App., 124 S.W.2d 401 (writ ref.), and the significance of "unnecessary hardship" with respect to these terms. "An exception is not to be confused with a variance. While the two words have often been treated as synonymous, they are readily distinguishable. * * * In the case of a variance, a literal enforcement of the regulations is disregarded; the conditions permitting an exception are found in the regulations themselves and, furthermore, those condi-

tions may not be altered. * * * Speaking broadly, then, a variance is authority extended to the owner to use his property in a manner forbidden by the zoning enactment. An exception, on the other hand, allows him to put his property to a use which the enactment expressly permits." Mitchell Land Co. v. Planning and Zoning Board, 140 Conn. 527, 102 A.2d 316, 318. And historically, the showing of "unnecessary hardship" has been associated only with a Board of Adjustment exercise of the variance power; the required proof being subject to well settled rules (See Footnote 2). A further usual ground of distinction, says Yokley, Vol. 1, p. 324, is: "that an applicant for a *special exception* need not carry the burden of proving unnecessary hardship. It is when seeking a *variance* that the applicant therefor must show that unnecessary hardship will result unless the variance is permitted." It is also noteworthy that "unnecessary hardship" is mentioned in the statute, Art. 1011g, only in connection with the Board's power of variance. And so far as we can determine, the ordinance of appellee City is the first to employ the term as a standard of guidance for the Board in cases of special exception.

 In its context, the "hardship," as related to the Board's power of *variance*, arises out of a "literal enforcement of the provisions of this ordinance," whereas, under the *exception* power, subject to required criteria, the applicant is allowed to put his property *to a use which the enactment expressly permits;* the word "prevent" in the latter case authorizing the Board to take even a prospective view. The powers being thus distinguishable, so also distinctive are the factors giving rise to their exercise. Appellants mistakenly argue that the rules traditionally associated with the variance provision are likewise controlling of the Board's right to grant special exception.

For instance, to confine the showing of hardship to the nine lots in question is to defeat the object of the special exception clause; contemplating as it does, the location of a free parking area "for passenger motor vehicles, and commercial vehicles belonging to the owner of the premises or business, *in connection with any use permitted in any district.*" (Italics ours.) The whole purpose of the special exception being to grant off-street parking in a given area *in connection* with the commercial use permitted in an adjacent district, then surely the hardship involved may also relate to the owner of abutting premises for whom the exception is sought. Quite relevant is the following argument of prevailing counsel, which we approve: "Appellees conclude, therefore, that 'to relieve or prevent unnecessary hardship' as used in the special exception provision in question cannot mean that 'the plight of the premises must be unique.' What constitutes 'unnecessary hardship' in that provision must, of course, depend on all the circumstances of each case. Construed to effectuate its purpose, it must mean not only hardship limited to the premises, but also hardship as to the use of the adjacent property, as contemplated by the terms of the provision. It must comprehend the prevention of prospective hardship as well as the relief of present hardship. Above all, it must mean hardship on the general public, for whose benefit the free parking area must be provided."

The factual controversy centered on the facilities presently available in Preston Center for public automobile parking in vicinity of the Neiman-Marcus store; appellants claiming that adequacy of parking space was conclusively demonstrated under the evidence; the Board's affirmative action on the application for an additional parking area being therefore wholly without justification and capricious. Preston Center has some 130,000 sq. ft. of floor selling

2. Such as: The hardship must not be self-imposed, nor financial only, and must relate to the very property for which variance is sought, i. e., a condition unique, oppressive, and not common to other property. Board of Adjustment v. Stovall, Tex.Civ.App., 218 S.W.2d 286; Scaduto v. Town of Bloomfield, 127 N.J.L. 1, 20 A.2d 649; Otto v. Steinhilber, 282 N.Y. 71, 24 N.E.2d 851.

space, that of Neiman-Marcus, 60,000 sq. ft.; the ordinance requiring that a retail store shall furnish public parking in ratio of one motor vehicle for each 500 sq. ft. of floor area building. Appellants' testimony developed that in the district were 800 automobile parking spaces; that an actual count taken every business day (four-hour period) between July 30 and September 3, 1953, showed at no time more than 300 spaces occupied by cars, with some 107 regularly parked, indicating ownership by store employees; a witness in the building business testifying that the nine lots in question could be profitably employed for duplex construction, which type of housing was in demand.

 On the other hand, Lloyd Braff, Dallas traffic engineer, a witness for appellees, testified to a survey of the Center made just before the Christmas season 1951; that the greatest accumulation of cars at any one time was approximately 610; that in the corresponding season (1953) at peak periods the Center would be overcrowded, traffic wise; that ten vehicles to every 1,000 sq. ft. of selling area is a proper ratio; that the parking situation was unbalanced, the area to the east along Northwest Highway and Pickwick Lane always having "dead" spaces; the heaviest traffic coming in from Preston Road on the Neiman-Marcus side. It was admitted that the Neiman-Marcus store had experienced great increase in business since its opening, at time of trial amounting to several millions of dollars annually. Stanley Marcus, president of appellee concern, testifed at Board hearings that on building of the store he had greatly underestimated the rapidity of residential development out there to the north and west, inadequate parking facilities and traffic concentration in the immediate vicinity soon becoming apparent; that his business, beginning with a personnel of 120, had more than doubled; that planned improvement of the nine lots (costing $47,000) as a public motor park contemplated a cost of some $75,000 in landscaping, and paving of entire area inclusive of alley; also enclosing same by appropriate brick wall and providing 208 additional parking spaces with

entrance on Wentwood Drive. Carl Mays, head of University Park Traffic Commission, and Jack Kerven, Traffic Engineer of University Park, testified in favor of the permit, the latter pointing to periods of traffic congestion to the east of the Neiman-Marcus building, and both stating that the traffic hazard would be greater with duplex development of the property than if used for public parking. Testimony of experts, also the lot owners most immediately affected (across alley to the south of the questioned area), was to the effect that there would be no diminution in values or enjoyment of neighboring property as a result of the proposed use. The foregoing testimony without more sufficiently refutes the charge of capricious action on part of the Board in grant of permit, and we are further bound by the trial court's findings and conclusions to like effect.

 Appellants assert invalidity of ordinance in that the City has there delegated legislative power to the Board of Adjustment, the permit issuing pursuant to such power. The point is overruled. Art. 1011g, V.A.C.S., provides in part that the Board of Adjustment "may, in appropriate cases and subject to *appropriate conditions and safeguards,* make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with *general or specific rules therein contained."* (Italics ours.) Appellee City's ordinance, sec. XVI, subdiv. 3, authorizes the Board of Adjustment, under specified conditions, to make "the following designated special exceptions * * *: (h) Permit the location in any district, except an 'A' or 'B' District, of a free parking area for passenger motor vehicles, and commercial vehicles belonging to the owner of the premises or business, in connection with any use permitted in any district; * * * *."* Applicable to the foregoing grant of authority, by both Legislature and ordinance, are the following general principles: (1) On the question of constitutionality or not of the delegated power, the inquiry is of whether the legislature has prescribed sufficient standards to guide the discretion conferred. If so,

the power is not "legislative" and its delegation is lawful; Davis, Administrative Law, p. 44; Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 130 A.L.R. 1053; Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022, also Id., 146 Tex. 286, 206 S.W.2d 235. (2) "It is fundamental that a legislative body may not delegate unlimited legislative powers and functions to an administrative agency. Whenever the legislative body vests any administrative agency, such as a zoning board, with the power to exercise discretion, it must spell out the limits of that discretion by the establishment of some standard to guide the agency. Such a standard may be general and at the same time be valid if it is capable of reasonable application." Yokley, Zoning Law and practice, Vol. 1, p. 327.

In Driskell v. Board of Adjustment, Tex. Civ.App., 195 S.W.2d 594, 595, the Fort Worth ordinance was similarly attacked as delegating legislative power to that municipal agency; the Appellate Court holding that the Board's authority to make exceptions was subject to such limitations for their guidance as to constitute it a valid delegation of power. There the agency was empowered to "permit, after public notice and hearing, the location of any of the following uses in a district from which they are prohibited by this ordinance: * * * Hospitals and Institutions of an Educational or Philanthropic Nature * * *"; the Orphanage Home exception there sought being admittedly in that category. Said the Fort Worth Court: "We may here observe that notwithstanding the fact that the zoning ordinance purported primarily to allow only structures of a certain kind and limited to specified uses in given districts, yet when we read the ordinance as a whole these restrictions are each and all subject to the limitations placed thereon by said 'section 3' conferring upon the Board authority to make variance from the ordinance, setting

out therein to what extent variances and nonconforming structures could be allowed by the Board. Hence it cannot be said that those to be allowed by the Board were strictly prohibited. *They were in fact permitted* if within the discretion of the Board; under its limitations it did not destroy the effect of the ordinance creating the district. * * * It must be conceded that the granting of the permit is within the sound discretion of the Board after weighing all the surrounding facts and circumstances, taking into consideration *the legal curb* invoked by the ordinance made to avert an abuse of that discretionary power. * *" (Emphasis ours.)

The oft cited and well considered case of Harrington v. Board of Adjustment, supra, which appellants advance as on all fours with their contention, is not so in fact. Initially that decision is illustrative of the failure of earlier ordinances to implement the statutory directive (special exception); that is, to clothe the Board of Adjustment with the power to permit the specific use requested as a special exception. The result was, as held by the courts, that to construe a general power to make exceptions (without any being specified) as permissible action by the Board, would in effect amount to a grant of legislative power. In Harrington's appeal the Board was authorized, in effect, to intrude *any* business into a residential district under conditions so general as to become power almost unlimited. A filling station was involved under an ordinance expressly prohibiting their location in a residential district. The Amarillo Court distinguished the problem there dealt with from a situation where [124 S.W.2d 408] (as here) "the special exception * * * was lawfully permitted by the ordinance"; further pointing to the lack of provision by the City Council of "appropriate conditions and safeguards." (See Footnote 3). In the following cases cited by appellants, the or-

---

3. In Driskell v. Board of Adjustment, the identical point was emphasized as follows: "In the Harrington case, supra, the Board of Adjustment granted a permit to an applicant to erect a filling station in an area 'zoned' as strictly residen- tial. * * * *A filling station was not one of those institutions the municipality had authorized the Board to make a variance in favor of * * *.*" (Emphasis ours.)

dinance did not expressly authorize the Board in its discretion to grant permission for the specific use requested: Board of Adjustment of City of San Antonio v. Levinson, Tex.Civ.App., 244 S.W.2d 281; Texas Consolidated Theatres v. Pittillo, Tex.Civ.App., 204 S.W.2d 396; Board of Adjustment v. Stovall, Tex.Civ.App., 218 S.W.2d 286. In contrast, see Boehme Bakery v. City of San Angelo, Tex.Civ.App., 185 S.W.2d 601; City of San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67. In other jurisdictions, several being referred to in Harrington's appeal, the Board's power to make a special exception has been sustained. against the contention that it was a delegation of legislative power, where the exception to be permitted was spelled out in the general ordinance. See also, for parking cases, St. Patrick's Church Corp. v. Daniels, 113 Conn. 132, 154 A. 343; Steisapir v. Sears Roebuck & Co., Ohio App. 112 N.E.2d 548.

 Further points of appellants and intervenor, though thoroughly considered, will be disposed of briefly: (1) The 1952 ordinance of appellee City is attacked as illegal in allowance of the particular exception "because passed for the benefit of one individual or corporation and without regard to the general welfare." The last comprehensive zoning measure, revising the 1940 ordinance, made numerous changes, adding the power on part of the Board to permit off-street parking areas in stated districts under stated conditions; the property in question obviously coming within its purview. The presumption of validity adheres to an amendatory ordinance; Clesi v. Northwest Dallas Imp. Ass'n, Tex.Civ.App., 263 S.W.2d 820; and here such presumption has not been repelled by any legal showing of unreasonableness of ordinance, having no substantial relation to the public welfare. (2) It is argued that the permit is contrary to the ordinance, sec. 1, paragraph B, in that it interferes with and annuls certain covenants and agreements between parties; referring to the 1947 deed from Southern Methodist University and W. W. Ca-

ruth to A. B. Cass, Jr. and another, restricting the north half of Block 78 to two-story brick veneer single family or duplex houses. These nine lots make up a distinct and separate subdivision and adjoin the sixth section of University Heights Addition, the locale of appellants as we have already seen. Property owners in another subdivision have no standing to enforce deed restrictions imposed upon property in a separate and distinct subdivision. Russell Realty Co. v. Hall, Tex.Civ.App., 233 S.W. 996 (writ ref.) (3) The grant of permit was not contrary to the general ordinance provision (Sec. V, para. 2) that a use not specifically authorized or permitted in any district is expressly prohibited. The use in question *is* expressly authorized by the special exception provision. The same point was raised in Boehme Bakery v. City of San Angelo, supra, reversed by Supreme Court on another ground; the court holding that if the general provision of the ordinance were absolute, foreclosing any right of the Board to grant any exception thereto, then the special exception power would be rendered inoperative and meaningless. (4) No issue of spot zoning is here involved, nor was there any rezoning of the property in controversy by the permit as complained of. (5) Intervenor claims error in the denial of a jury trial; the suggested questions of fact being of whether certain members of the Board had been materially influenced by their "personal relationship" to Neiman-Marcus Company, which, if affirmatively found, would have had relevancy in turn to intervenor's contention "that the Board acted capriciously." There were no disputed facts concerning these charges of disqualification; same having here been determined as a matter of law. Capricious action of the Board amounting to an abuse of discretion was likewise a question of law. City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169; Driskell v. Board of Adjustment, supra.

All points of error, upon due consideration, are overruled and judgment of the trial court is affirmed.