TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO.03-03-00263-CV






Richard Ferris, Appellant


v.


City of Austin and Board of Adjustment of the City of Austin, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. GN200222, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





O P I N I O N




 This case deals with the application of municipal land-use regulations and the judicial
deference afforded to the decisions made by administrative bodies to vary the terms of those
regulations. Appellee, the City of Austin ("City"), in its proprietary capacity as developer of certain
property in East Austin, sought relief from its own zoning regulations, those governing the size and
shape of lots prior to development, so that it could construct between ten and twenty townhomes on
property along East 12th Street and Navasota Street in Austin. At a public hearing, appellant
Richard Ferris owner of rental property near the proposed development, testified in opposition to the
City's plan. He argued that the neighborhood needed commercial not residential services. After the
variances were granted by the City's Board of Adjustment ("Board"), Ferris sought review of the
Board's decision in district court, which affirmed the Board's decision by summary judgment. We
now affirm the district court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND


 On January 14, 1999, the City of Austin ("City") approved the Urban Renewal Plan
("URP"). Austin, Tex., Code of Ordinances No. 990114-G (1999). The URP targeted property
along East 11th and 12th Streets in Austin for redevelopment and renovation. Id. Specifically,
property located at 1101-1111 East 12th Street, and 1190-1196 Navasota Street (hereinafter "the
property") was earmarked for townhome development. Originally, the City planned to build between
thirty and thirty-six new townhomes but later reduced that number to between ten and twenty. 
Austin, Tex., Code of Ordinances No. 010802-89 (2001). The property was zoned for both
commercial and residential uses. (1) All development, whether commercial or residential, had to
comply with the lot-size restrictions governing commercial development. Austin, Tex., Code of
Ordinances No. 980430-0 (1998).

 On November 16, 2001, Jerry Freese, on behalf of the City of Austin Neighborhood
Housing and Community Development ("NHCD"), asked the Board for an area variance (2) from the
zoning requirements governing development of the property. Freese made the following variance
requests:


1. A decrease in the minimum lot width under City Code § 25-2-492(D) (3) from 50
feet to 30 feet;


2. A decrease in the minimum lot size under City Code § 25-2-492(D) (4) from 5750
square feet to 2500 square feet;


3. A decrease in the minimum site area for a townhouse development under City
Code § 25-2-775(c) (5) from 3600 square feet to 2500 square feet; and

4. A decrease in the minimum side street setback under City Code § 25-2-492(D) (6)
from 10 feet to 5 feet. 



(collectively, "the area requirements").

 On December 10, 2001, the Board held a public hearing on the City's requested
variances. Freese testified that his office was working at the direction of the Austin City Council
pursuant to the URP. The URP mandated the property be developed for townhome use. The
townhomes were to be offered for sale to persons with incomes at or below 80% of the median
family income ("MFI"). He said they discovered that the lots were too small and irregularly shaped
to comply with the minimum lot-size restrictions. In addition, Freese said the property was burdened
by topographical restraints, large oak and pecan trees, slopes, and a home designated a historical site,
which interfered with the City's ability to make reasonable use of the property. He said that without
the variances the City would not be able to comply with the URP's goal of building between ten and
fifteen townhomes. He testified that, all told, only one of the twelve total lots along 12th Street and
Navasota was currently compatible with townhome use.

 Testifying in opposition, appellant, the owner of a sixteen-unit apartment house
located at 904 and 906 East 12th Street, argued that the City's plan to construct townhomes on the
property would result in a financial loss to the City and the neighborhood. He also said that the
neighbors preferred a grocery store or laundry over townhomes.

 In reply, Freese pointed out that the City already had plans to turn over other property
in the area for commercial development but that, as to this property, commercial use would be
incompatible with the URP.

 The Board unanimously approved the variances and made the following findings:


1. The Zoning regulations applicable to the property do not allow for a reasonable
use because: the 11th/12th Street Urban Renewal Plan calls for high density
townhouse development with the conditional overlay prohibiting residential
driveway access to E. 12th requiring the construction of an alley which reduces
available lot depth and size.


2. (a) The hardship for which the variance is requested is unique to the property
in that: the Urban Renewal Plan project controls stipulate townhouse
development and property must be developed in accordances with U.R.P. 


 (b) The hardship is not general to the area in which the property is located
because this property is located within an U.R.P. area subject to project
controls.


3. The variance will not alter the character of the area adjacent to the property, will
not impair the use of adjacent conforming property, and will not impair the
purpose of the regulations of the zoning district in which the property is located
because: project site is vacant and proposed development is supported by
Anderson Hill, Cental East Austin Neighborhood Associations, planning team
and promotes Smart Growth, S.M.A.R.T. [Safe, Mixed-Income, Accessible,
Reasonably Priced, and Transit-Oriented] housing and A.R.A. [Austin
Revitalization Authority] goals.



 Appellant timely appealed the Board's decision to grant the variances. In addition
to its explicit findings, the Board cited the following reasons for issuing the variances:


 1. The URP called for the construction of townhomes.


 2. Receipt of federal funds was conditioned on the construction of affordable
housing for persons at 80% or below the median family income.

 3. In order to place affordable housing in the form of townhomes on each of these
lots, variances were needed given the current configuration of the lots and other
constraints on the property.


 4. Current lot configurations would not meet the City's lot-size requirements for
the construction of townhomes.


 5. Because driveway access to East 12th Street was prohibited by City ordinance,
an alleyway had to be built behind the townhomes at a cost between $250,000
to $400,000.


 6. The construction of an alley would reduce the depth of each lot by 20 feet.


 7. To meet the City's lot-size requirements for townhomes of 3600 square feet,
each lot had to measure 44 feet wide (44 feet wide x 84 feet long = 3696 square
feet).


 8. Lots could not be less than 50 feet wide, however, so a lot-width variance was
required.


 9. The City's ability to construct affordable housing was jeopardized by the costs
associated with alley construction.


10. Current zoning regulations did not allow for a reasonable use


11. Only one of the twelve lots designated "CS-MU-CO" could support any
residential or commercial use.



 In response, appellant argued that the applicable zoning regulations would not have
prevented the City from putting the property to some reasonable use had the City had more
reasonable expectations for the property. Specifically, appellant complained that the City was
attempting to over-burden the property, that is, build more townhomes than the property could
support. Appellant also argued that the alleged hardship was not unique to the area but driven by
financial considerations alone. He argued that the City could not show that absent the variances, the
City would be deprived of privileges afforded other similarly situated property owners because no
other property owners were similarly situated; that is, no other nearby property was zoned "CS-MU-CO." On February 6, 2003, the trial court heard arguments in support of the City's motion for
summary judgment, and granted the motion on March 11, 2003.

 On appeal from the district court's ruling, appellant raises four issues. In one issue,
appellant challenges the Board's decision to grant the variances on the grounds that the variance
granted the City use of its property not enjoyed by similarly situated property owners. Such a
decision, according to appellant, amounted to "rezoning by variance." Appellant raises three issues
dealing with the Board's hardship finding. According to appellant, the Board abused its discretion
in finding hardship because (1) the City cannot ask for relief from a hardship that was self-imposed;
(2) a hardship finding cannot be justified solely on financial need; and (3) there was no causal nexus
between the hardship claimed and the variance sought since the City would have to resubdivide the
property even with the variance. 


DISCUSSION


Board Authority

 We begin with a review of the Board's authority. The Board is authorized to make
"special exceptions" to the terms of a zoning ordinance "in appropriate cases and subject to
appropriate conditions and safeguards" that are "consistent with the general purpose and intent of
the ordinance." Tex. Loc. Gov't Code Ann. § 211.008(a) (West 1998). It may grant a variance from 
the terms of a zoning ordinance if (1) the variance is consistent with the public interest and the spirit
of the ordinance; (2) special conditions on the property exist, (3) literal enforcement of the ordinance
would result in an unnecessary hardship; and (4) the issuance of the variance would result in
"substantial justice." Id. § 211.009(a)(3) (West 1999). The Board is authorized to grant a variance
from the terms of a zoning ordinance where "the strict application of [the City's zoning laws]
deprives the property owner of privileges that are enjoyed" by others similarly situated. Austin, Tex.,
Land Dev. Code § 25-2-473. In granting a variance, the Board must make the following findings
of fact: (1) the restrictions in the current zoning ordinance do not allow for "a reasonable use of
property;" (2) the hardship necessitating the variance is unique to the property and not generally
characteristic of the area; and (3) development under the variance will not impair or alter the use or
character of adjacent property or clash with the underlying purposes of the zoning restrictions. Id.
§ 25-2-474.


Review of board decisions

 Any person injured by the Board's decision may challenge the legality of its decision
in a court of record. Tex. Loc. Gov't Code Ann. § 211.011(a) (West Supp. 2004). The court may
grant a writ of certiorari directed to the Board. (7) Id. § 211.011(c). The Board must file a verified
return concisely stating any pertinent and material facts showing the grounds for its decision. Id.
§ 211.011(d). The court may take additional evidence if "necessary for the proper disposition of the
matter." Id. § 211.011(e). The party challenging the Board's decision has the burden of establishing
its illegality. Pearce v. City of Round Rock, 78 S.W.3d 642, 646 (Tex. App.--Austin 2002, pet.
denied). The decision is presumed legal and is reviewed for a clear abuse of discretion. Id. A clear
abuse of discretion occurs where the Board has acted without reference to any guiding principles or
rules of law. Id. As long as some evidence of substantive and probative character exists to support
the Board's decision, it has not abused its discretion. Southwest Paper Stock, Inc. v. Zoning Bd. of
Adjustment, 980 S.W.2d 802, 805-06 (Tex. App.--Fort Worth 1998, no pet.).


Review of the trial court

 The City moved for summary judgment. See Tex. R. Civ. Proc. 166a(b), (c). The
trial court granted the City's motion without specifying the grounds. We must affirm if any of the
movant's grounds have merit. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). The
City's motion was based on two grounds: (1) The Board's decision was supported by evidence of
substantive and probative character and (2) the Board's decision was supported by evidence of the
need for affordable housing. We begin by reviewing the Board's hardship finding.


Hardship

 In three issues, appellant challenges the legality of the Board's finding of hardship. 
Again, the Board could grant the variance if literal enforcement of applicable zoning laws would
result in an unnecessary hardship. See Tex. Loc. Gov't Code Ann. § 211.009(a)(3); Austin, Tex.,
Land Dev. Code § 25-2-473. Appellant's first two hardship issues question the sufficiency of the
evidence before the Board. Appellant claims that it was an abuse of discretion for the Board to grant
the variances because the evidence showed that the hardship suffered by the City was self-imposed
and that the hardship was financial in nature. Appellant's last hardship issue challenges the need for
the variances altogether.


Self-imposed hardship

 First, according to appellant, the City's hardship was self-imposed. Appellant
contends that the City's goal of building between ten and twenty townhomes was unreasonable given
the size and shape of the lots. According to appellant, the property was compatible with some
residential development--just not to the degree or at the density the City intended. By burdening
the property with more townhomes than it could support, the City was imposing the hardship on
itself. In response, the City denies attempting to over-burden the property and adds that without the
variances it could make no use of the property, commercial or residential, because the lots did not
meet the area requirements for commercial development. 

 Whether a hardship exists is a question of fact to be determined by the Board. 
Freeman v. Board of Adjustment, 230 S.W.2d 387, 388 (Tex. Civ. App.--San Antonio 1950, no
writ). On appeal, the issue is not whether there was hardship, but whether the trial court, after
examining all the evidence, could conclude as a matter of law that the Board had evidence of a
substantive and probative nature before it upon which it could conclude that a literal enforcement
would result in an unnecessary and unique hardship. Currey v. Kimple, 577 S.W.2d 508, 513 (Tex.
Civ. App.--Texarkana 1978, writ ref'd n.r.e.). Where, owing to no fault of the owner, the lots are
configured in such a way as to make them incompatible with zoning laws and the strict application
of those zoning laws would deny the property owner reasonable use of the property, the Board has
the authority to grant a variance from the zoning restrictions. Id. Such is the case here. There is no
evidence that the City was the original developer of the property or that it was responsible for
subdividing the lots into their present non-conforming shapes. In the absence of evidence the
substandard lot configuration was the product of deliberate conduct of the City, the City's hardship
was not self-imposed. We overrule appellant's first hardship issue.


Financial hardship

 Appellant's second issue deals with the financial reasons the City cited in support of
the requested variances. Appellant believes that the Board's decision to grant the City's variances
rested solely on the economic considerations cited by the City. According to appellants, the City
sought the variances it did--a twenty foot-reduction in the lot width requirement, a 3250 square-feet
reduction in the lot-size requirement, a 1100 square-feet reduction in the site-size requirement, and
five foot-reduction in the side-street setback requirement--so that it could make maximum use of
the property at minimal cost. At one point in the hearing, the Board asked Freese why the City had
proposed the number of townhomes it had. He responded:


Why so many? Site development costs are the same for the city as they are for a
private developer, even though we're the city and we're using federal money, we still
have to be guardians of that federal money and use it to the best of our ability.


The site development costs are going to be the same whether we put 5 houses up
there or 10. Now, if you don't give us the variances, we will build 5 units instead of
10 but they are going to be far less affordable, that's going to push the affordability
rather than maybe getting somebody at 60% MFI, it could be the cost would go up
and we'll only be able to get people at 80% MFI. I can't give you those numbers
until we know of your decision and the engineers go back and design and we design
the houses. But, that's the issue, we're gonna have to build the alley regardless, the
engineers are estimating the alleys going to be between $250,000 and $400,000. That
cost is gonna be there whether we build 5 houses or 10 or 15. That's why we're
trying to build as many in there as possible to make it as cost effective as possible.

 A similar "economies-of-scale" argument was rejected in Board of Adjustment of City
of San Antonio v. Willie, 511 S.W.2d 591, 594 (Tex. Civ. App.--San Antonio 1974, writ ref'd n.r.e.). 
In that case, the property owner sought a variance from an ordinance limiting the height of buildings. 
Id. at 592. The board of adjustment granted the variance without making a specific finding of
hardship. Id. at 593. Instead, it had based its decision solely on the testimony of the property
owner's engineer who said that the multistoried structure was the "highest and best use of this very
valuable commercial property in that by going up you spread the costs of the land." Id. at 594. The
board's decision was reversed in the absence of noneconomic evidence supporting the board's
hardship finding. Id.; see also Bat'tles v. Board of Adjustment & Appeals, 711 S.W.2d 297, 300
(Tex. App.--Dallas 1986, no writ) (reversing decision to grant variance to developer where only
showed that hardship suffered by applicant was economic). 

 Appellant cites the correct rule governing a finding of hardship. He states, "In order
to justify a variance, a hardship must not be self-imposed, nor financial only, and must relate to the
very property for which variance is sought, i.e. a condition unique, oppressive, and not common to
other property." See Town of S. Padre Island v. Cantu, 52 S.W.3d 287, 290 (Tex. App.--Corpus
Christi 2001, no pet.); Moody v. City of Univ. Park, 278 S.W.2d 912, 920 (Tex. Civ. App.--Dallas
1955, writ ref'd n.r.e.). This is the rule as we understand it. But turning to the record before the trial
court, we find that the Board's decision was supported by noneconomic evidence. The evidence
showed that the property along East 12th Street and Navasota consisted of 12 irregularly sized lots. 
The lots were subdivided into irregular shapes before the City zoned the property and created the
various minimum lot-size requirements. The lots on Navasota were less than 50 feet wide and 5,750
square feet in size and could not support commercial or residential use. Of the nine lots on 12th
Street, only two were large enough to accommodate any commercial or residential use--the lots at
1105 and 1111 East 12th Street. The latter was the address of the Connelly-Yearwood home, which
was scheduled for renovation. The City's plan to carve out the Connelly-Yearwood home from the
remainder of the lot and put the remainder to residential use was stymied by a large tree present on
the lot. Other lots were burdened by topographical restraints making residential use impracticable. 
We find this evidence sufficient to support the Board's decision and overrule appellant's second
issue.


No nexus between the variance sought and hardship claimed

 Appellant raises a third hardship issue; namely, the Board's decision to grant the
variances was illegal because the City had not demonstrated a nexus between the hardship claimed
and the variances sought. In short, appellant claims the remedy available to the City was to
resubdivide the property and not to vary its boundaries. Appellant alleged that "even with the
variances, the City will have to resubdivide as two of the presently configured lots would not meet
the reduced thirty-foot lot width requirement, nor the uniform thirty foot lot widths provided in the
City's own plans." Appellant also contends that there was some intermediate lot configuration
available to the City that would allow for an alternative residential use--one available without the
need to vary the boundaries of the property as extensively as the City proposed. Appellant argued
that the City cannot justify such an "extreme departure" from the zoning laws that govern the
property's development. He suggests a use, SF-4, (8) that would be less of a departure from present
zoning restrictions and would allow for reasonable use. The City contends that the issue was not
whether the City had an alternative residential option but whether the City could make any use of
the property absent the variances.

 We find nothing illegal about the Board's decision to grant the City the variances
under the grounds proposed by appellant. We agree with the City that the only issue before the
Board was the propriety of the City's requested variances. The Board's decision was proper because
there was evidence that a strict application of the terms of the commercial and residential zoning
ordinance would deprive the City of the reasonable use of the property. Evidence as to alternative
uses available to the City once the variances were granted did not bear on whether the City could
make any use of the property absent the variances. (9) For example, appellant says the City should have
asked to construct single-family residences on the property instead of townhomes because that choice
would require less of a departure from the lot-size restrictions. The Texarkana Court of Appeals in
Currey rejected that very argument. 577 S.W.2d at 513. Once the variance is granted, the property
owner is free to put the property to any conforming use. Id.

 Evidence of some other permitted use would have been relevant if the record showed
that the property, as configured, could have supported some commercial or residential use. Since
all development on this property was governed by area regulations for property zoned "Commercial
Services" and the record shows that the lots, save one, did not meet those regulations, the Board's
decision was reasonable. A finding of hardship must be based on a finding that the property, as
situated, would not support some conforming use. See Bat'tles, 711 S.W.2d at 300; Curry, 577
S.W.2d at 513; Board of Adjustment v. Stovall, 218 S.W.2d 286, 288 (Tex. Civ. App.--Fort Worth
1949, no writ). The record shows that the City could not put the property to reasonable use under
the applicable zoning regulations. Once the Board determined that a strict application of the area
restrictions would deprive the City of reasonable use of the property, commercial or residential, then
the City was free to make whatever residential use of the property it saw fit. (10)

 Last, we find that appellant has not supported his assertion with any legal authority
that resubdivision was the only relief available to the City. Evidence as to other relief available to
the City did not bear on the propriety of the City's requested variance.

 Having found that the Board's decision to grant the variances was supported by the
evidence of substantive and probative character, we overrule appellant's third hardship issue.


Rezoning by variance

 In his last issue, appellant contends that in granting the City's variances, the Board
rezoned the property, a legislative power vested only in the Austin City Council. Appellant argues
that the Board does not have the authority to vary the terms of the zoning ordinance. As indicated
above, the Board is specifically authorized to vary the terms of the zoning ordinance. Tex. Loc.
Gov't Code Ann. § 211.009(a)(3).

 Appellant also argues that the City failed to establish that "because of special
circumstances of a property, the strict application of this chapter deprives the property owner of
privileges that are enjoyed by another person who owns property in the area that has the same
zoning designation as the property for which the variance is requested." Austin, Tex., Land Dev.
Code § 25-2-473. Appellant argues that because there is no other property in the area with the same
"CS-MU-CO" designation, the request for a variance should have been denied. The City counters
that the only findings the Board was required to make before granting a variance were those found
in section 25-2-474 of the City of Austin's Land Development Code. (11) Consequently, the failure to
show that the City was denied a privilege afforded similarly situated property owners does not render
the Board's decision illegal.

 We disagree with the City's argument that the sole criteria for granting a variance is
found in section 25-2-474. While the Board is not required to make an explicit finding that the
property owner has been denied a privilege afforded similarly situated property owners, there must
be evidence in the record that the City was denied a privilege afforded to other similarly situated
property owners within the area. But we find that there was. While there was no property in the area
zoned "CS-MU-CO," there was other residential property. Neither appellee nor appellant cite us to
any Texas case law interpreting a similar criteria for granting a variance but it is rather clear that the
City was denied a privilege afforded other residential property owners--the right to construct some
residential housing. As we have indicated above, given the current configuration of the lots, only
one of the 12 lots designated "CS-MU-CO" could sustain any development, commercial or
residential; consequently, we overrule appellant's fourth issue.


CONCLUSION


 We find the record before the trial court contained evidence of substantive and
probative character in support of the Board's decision to grant the variances. We affirm the trial
court's judgment granting the City's motion for summary judgment.



 

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: March 25, 2004
1. The property consisted of 12 lots zoned "CS-MU-CO." "CS" is the designation for a
"Commercial Services District," a district allowing "commercial or industrial use of a service nature
that has operating characteristics or traffic service requirements that are incompatible with residential
environments." Austin, Tex., Land Dev. Code § 25-2-103 (2003). "MU" is the designation for
"Mixed Use." Id. § 25-2-172 (2003). Townhomes are a permitted use in a Mixed Use District. Id.
§ 25-2-646(3) (2003). "CO" is the designation for a "Conditional Overlay," which is some
modification of the land use regulations so that two competing uses, in this case commercial and
residential, could co-exist. Id. § 25-2-164 (2003). 
2. A "variance" allows a property owner to use land in a manner forbidden by the zoning
ordinance. West Tex. Water Refiners v. S & B Beverage Co., 915 S.W.2d 623, 627 (Tex. App.--El
Paso 1996, no writ). An "area variance" allows the property owner to deviate from the strict
application of the terms of the zoning ordinance involving "setback lines, frontage requirements,
height limitations, lot-size restrictions, density regulations, offstreet parking and yard requirements." 
Robert M. Anderson, American Law of Zoning 3d § 20.07 (1986). Area restrictions govern size not
use. See id. A "use variance," on the other hand, allows a property owner to seek total relief from
the zoning ordinance itself, that is, the uses permitted under the ordinance and not just their terms,
for example, to construct a filling station, beauty store, drive-in theater, or parking lot in an area
designated for residential use only. See id. § 20.06; Swain v. Board of Adjustment of City of Univ.
Park, 433 S.W.2d 727, 732 (Tex. Civ. App.--Dallas 1968, writ ref'd n.r.e.) (denying variance where
property owner sought to construct a filling station in an area zoned for residential use); Board of
Adjustment v. Levinson, 244 S.W.2d 281, 282 (Tex. Civ. App.--San Antonio 1951, no writ)
(denying variance where property owner sought to construct beauty store in area zoned for residential
use); Board of Adjustment v. Stovall, 218 S.W.2d 286, 289 (Tex. Civ. App.--Fort Worth 1949, no
writ) (denying variance where property owner sought to construct drive-in theater in area zoned for
residential uses); Texas Consol. Theatres, Inc. v. Pittillo, 204 S.W.2d 396, 399 (Tex. Civ.
App.--Waco 1947, no writ) (denying variance where property owner sought to construct parking
lot in area zoned for residential uses); Harrington v. Board of Adjustment, 124 S.W.2d 401, 408
(Tex. Civ. App.--Amarillo 1939, writ ref'd) (denying variance where property owner sought to
construct filling station in area zoned for residential uses). As we discuss below, a board of
adjustment may grant a property owner relief from the terms of a zoning ordinance but not from the
uses permitted by the ordinance. See Tex. Loc. Gov't Code Ann. § 211.009 (West 1999). 
3. The minimum lot width requirement for a Commercial Services District is 50 feet. Austin,
Tex., Land Dev. Code § 25-2-492D (2003). 
4. The minimum lot size for a CS zoning district is 5750 square feet. Id.
5. The minimum site area for a townhouse is 3600 square feet. Id. § 25-2-775.
6. The minimum side street setback for a CS zoning district is 10 feet. Id. § 25-2-492D.
7. At common law, a review by certiorari was limited to determining whether the inferior
body had acted within its proper jurisdiction. City of San Angelo v. Boehme Bakery, 190 S.W.2d 67,
70 (Tex. 1945). The only remedy for a jurisdictional error was to quash the record. Id. at 70. A
review by certiorari of a decision of a board of adjustment is broader than at common law in that in
passing on the legality of the order of the board, the trial court will consider not only the original
filings before the board but additional evidence introduced before the trial court as well. Id.
8. Single-family residence small lot (SF-4A) district is the designation for a moderate density
single-family residential use on a lot that is a minimum of 3,600 square feet. Austin, Tex., Land
Dev. Code § 25-1-58 (2003). 
9. By confusing the type of relief requested by the City, appellant misunderstands the
difference between a "use variance" and an "area variance." The City was not attempting to put the
property to any prohibited use. Townhomes are a permitted use in a "Mixed Use District." Austin,
Tex., Land Dev. Code §§ 25-2-172, 25-2-646(3). Appellant says that the City could have
constructed single-family residences on the property. That is true but the City chose to construct
townhomes on the property. It had every right to do so.
10. While the Board's findings of fact specifically cite compliance with the URP as its
justification for finding hardship, the record indicates that there was other evidence supporting the
Board's decision such as the physical characteristics of the property and the irregularly sized lots. 
Evidence that the design for the property would have some ancillary public benefit strengthens the
equitable considerations before the Board, Tex. Loc. Gov't Code Ann. § 211.009(a)(3) (requiring
the Board to do "substantial justice."), but cannot form the sole basis for finding a hardship,
Anderson, supra § 20.41.
11. The board of adjustment must make the following required findings: (1) the restrictions
in the current zoning ordinance do not allow for "a reasonable use of property;" (2) the hardship
necessitating the variance is "unique to the property and is not generally characteristic of the area in
which the property is located;" and (3) development under the variance will not impair or alter the
use or character of adjacent property or clash with the underlying purposes of the zoning restrictions. 
Austin, Tex., Land Dev. § 25-2-474 (2003).