## Sham Culberson v. B. G. Ashford.

No. 3886.   Decided June 19, 1929.
(18 S. W., 2d Series, 585.)

*James E. Yeager,* for appellant.

*R. D. Evans,* for appellee.

No briefs reached the Reporter.

Mr. Justice PIERSON delivered the opinion of the court.

This case is before us on certified question from the Court of Civil Appeals for the Third Supreme Judicial District.

Appellant, Sham Culberson, rented certain agricultural lands from appellee, Ashford. He alleged that Ashford demanded and collected from him more money rent than is permitted by Article 5475 of the Revised Statutes of 1911, which is Article 5222 Revised Statutes

of 1925, and sought to recover the penalty of double the amount of rent money so collected, as provided by said Article. Article 5475, Revised Statutes 1911, was originally enacted in 1874 (Acts 1874, p. 55, P. D. 7418c; G. L., Vol. 8, p. 57). It is known as the "Landlord's Lien Article," and until 1915 read as follows:

"All persons leasing or renting lands or tenements at will or for a term of years shall have a preference lien upon the property of the tenant, as hereinafter indicated, upon such premises, for any rent that may become due and for all money and the value of all animals, tools, provisions and supplies furnished by the landlord to the tenant to make a crop on such premises; and to gather, secure, house and put the same in condition for marketing, the money, animals and tools and provisions and supplies so furnished being necessary for that purpose, whether the same is to be paid in money, agricultural products or other property; and this lien shall apply only to animals, tools and other property furnished by the landlord to the tenant and to the crop raised on such premises."

The Legislature in 1915 (Acts 1915, p. 77) amended said Article by adding thereto the following:

"This article shall not apply in any way nor in any case where any person leases or rents lands or tenements at will or for a term of years for agricultural purposes where the same is cultivated by the tenant who furnishes everything except the land, and where the landlord charges a rental of more than one-third of the value of the grain and more than one-fourth of the value of the cotton raised on said land; nor where the landlord furnishes everything except the labor and the tenant furnishes the labor and the landlord directly or indirectly charges a rental of more than one-half the value of the grain and more than one-half of the value of the cotton raised on said land, and any contract for the leasing or renting of land or tenements at will or for a term of years for agricultural purposes stipulating or fixing a higher or greater rental than that herein provided for shall be null and void, and shall not be enforceable in any court in this State by an action either at law or in equity, and no lien of any kind, either contractual or statutory, shall attach in favor of the landlord, his estate or assigns, upon any of the property named, nor for the purpose mentioned in this article. If any landlord or any person for him shall violate or attempt to evade any provision of this article by collecting or receiving a greater amount of rent for such land than herein provided shall be collected or received by him upon any contract, either written or verbal, the

tenant or person paying the same, or the legal representatives thereof, may, by an action of debt instituted in the county of the defendant's residence or in the county where such rents or money may have been received or collected, or where said contract may have been entered into, or where the party or parties paying the same resided when such contract was made, within two years after such payment, recover from the person, firm or corporation receiving the same, double the full amount of such rent or money so received or collected."

The Court of Civil Appeals submits for our decision: "Whether or not the statute in question violates sections 3, 17, and 19 of Article 1 of our Constitution or either of them; or section 1 of the Fourteenth Amendment to the Constitution of the United States."

This case has been before both sections of the Commission of Appeals, and opinions were written by Judge German, Judge Nickels, and Judge Leddy,—Judge German and Judge Leddy having held that the amendment of 1915 is unconstitutional in so far as it declared certain contracts void and gave a cause of action for the recovery of a penalty of double the amount of rent money collected, as being violative of the Constitutions of the United States and of the State of Texas. In each instance the case was withdrawn from the Commission by the Court, and recently the cause was taken under submission by the Court for decision by it.

Section 1 of the Fourteenth Amendment to the Constitution of the United States provides:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The three sections of Article 1 of the Constitution of the State of Texas, mentioned in the certificate of the Court of Civil Appeals, read as follows:

"Sec. 3. All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

"Sec. 17. No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof."

"Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Some recent decisions of the Supreme Court of the United States have settled this case and make it necessary to hold that the second part of the statute, as set out above, that is the amendment of 1915, is violative of the Fourteenth Amendment to the Constitution of the United States, and of sections 17 and 19 of Article 1 of the Constitution of the State of Texas.

In the recent cases of Williams, Commissioner of Finance of Tennessee, et al., v. Standard Oil Co. of Louisiana, and Williams, etc., v. The Texas Co., by the United States Supreme Court, 278 U. S., 235, opinions delivered January 2, 1929, Advance Sheets Supreme Court Reporter, Vol. 49, pp. 115–118, the State of Tennessee by an enactment of its legislature undertook to fix the price at which gasoline may be sold in that State, and provided for punishment for the violation of its provisions. The Act created in the Department of Finance and Taxation a division of motors and motor fuel, which was authorized to collect and record data "concerning the manufacture and sale of gasoline, freight rates, differentials in price to wholesalers and retailers, the cost and expense of production and sale," etc. Gasoline was to be sold under permits, and only at prices fixed and determined by the commissioner. Price discriminations between persons and localities, as well as all rebates and price concessions, were prohibited. The Supreme Court of the United States held the Act unconstitutional as violative of the Fourteenth Amendment of the Federal Constitution. In ruling the case it used the following very comprehensive and conclusive language:

"The principal ground of attack, and the only one we need to consider here, is that the Legislature is without power to authorize agencies of the state to fix prices at which gasoline may be sold in the state, because the effect will be to deprive the vendors of such

gasoline of their property without due process of law in violation of the Fourteenth Amendment. Appellees applied for a temporary injunction against appellants, upon which there was a hearing, and the court below, consisting of three judges (section 266, Judicial Code; 28 U. S. C. A., Sec. 380), granted the injunction as prayed. 24 F. (2d) 455 (D. C.) sub nom. Standard Oil Co. v. Hall.

"It is settled by recent decisions of this court that a state Legislature is without constitutional power to fix prices at which commodities may be sold, services rendered, or property used, unless the business or property involved is 'affected with a public interest.' Wolff Packing Co. v. Industrial Court, 262 U. S., 522, 43 S. Ct., 630, 67 L. Ed., 1103, 27 A. L. R., 1280; Tyson & Brother v. Banton, supra (273 U. S., 418); Fairmont Creamery Co. v. Minnesota, 274 U. S., 1, 47 S. Ct., 506, 71 L. Ed., 893, 52 A. L. R., 163; Ribnik v. McBride, 277 U. S., 350, 48 S. Ct., 545, 72 L. Ed., 913. Nothing is gained by reiterating the statement that the phrase is indefinite. By repeated decisions of this court, beginning with Munn v. Illinois, 94 U. S., 113, 24 L. Ed., 77, that phrase, however it may be characterized, has become the established test by which the legislative power to fix prices of commodities, use of property, or services, must be measured. As applied in particular instances, its meaning may be considered both from an affirmative and a negative point of view. Affirmatively, it means that a business or property, in order to be affected with a public interest, must be such or be so employed as to justify the conclusion that it has been *devoted* to a public use and its use thereby in effect *granted* to the public. Tyson & Brother v. Banton, supra, 273 U. S., 434 (47 S. Ct. 426). Negatively, it does not mean that a business is affected with a public interest merely because it is large or because the public are warranted in having a feeling of concern in respect of its maintenance. Id., 273 U. S., 430 (47 S. Ct., 426)."

The last mentioned cases were concurred in by all but one of the members of the United States Supreme Court, and are the culmination and final decision of a series of cases by that Court.

The case of Tyson & Brother v. Banton, 273 U. S., 418, is equally as clear and strong. In that case the Supreme Court said:

"The right of the owner to fix a price at which his property shall be sold or used is an inherent attribute of the property itself, Case of the State Freight Tax, 15 Wall., 232, 278, and, as such, within the protection of the due process of law clauses of the Fifth and

Fourteenth Amendments. See City of Carrollton v. Bazzette, 159 Ill., 284, 294.

* * * * * *

"The authority to regulate the conduct of a business or to require a license, comes from a branch of the police power which may be quite distinct from the power to fix prices. The latter, ordinarily, does not exist in respect of merely private property or business, Chesapeake & Potomac Tel. Co. v. Manning, 186 U. S., 238, 246, but exists only where the business or the property involved has become 'affected with a public interest.'

* * * * * *

"A business is not affected with a public interest merely because it is large or because the public are warranted in having a feeling of concern in respect of its maintenance. Nor is the interest meant such as arises from the mere fact that the public derives benefit, accommodation, ease or enjoyment from the existence or operation of the business; and while the word has not always been limited narrowly as strictly denoting 'a right,' that synonym more nearly than any other expresses the sense in which it is to be understood.

* * * * * *

"The significant requirement is that the property shall be devoted to a use in which the public has an interest, which simply means, as in terms it is expressed at page 130, that it shall be devoted to 'a public use.' Stated in another form, a business or property, in order to be affected with a public interest, must be such or be so employed as to justify the conclusion that it has been *devoted* to a public use and its use thereby, in effect, *granted* to the public. See Louisville &c. R. R. Co. v. West Coast Co., 198 U. S., 483, 500."

At the close of the World War an Act was passed for the District of Columbia which provided that "the right of a tenant to occupy any hotel, apartment or 'rental property,' i. e., any building or part thereof, other than hotel or apartment, is to continue notwithstanding the expiration of his term, at the option of the tenant, subject to regulation by the commission appointed by the Act, so long as he pays the rent and performs the conditions as fixed by the lease, or as modified by the commission."

The validity of this Act was the issue in the case of Block v. Hirsh, 256 U. S., 135, 65 L. Ed., 865. A similar case is Brown Holding Co. v. Feldman, 256 U. S., 170, 65 L. Ed., 877, arising in New York City, in which Feldman was claiming the right to hold

over after his lease had expired, claiming the right to do so under Chapters 942 and 947 of the laws of the State of New York, 1920. These two enactments were upheld by the Supreme Court of the United States purely on the ground that they were emergency enactments and of limited duration, and the statutes were sustained purely as a war emergency, as was stated in the opinions. These two cases were decided by a divided court of five to four, and the court seemed not to be satisfied with the holding even though they were based on a war emergency. The later cases referred to above and quoted from, and the several cases cited in them, state clearly the underlying principles governing this and similar cases, and announce the clear and final conclusion of the Supreme Court of the United States upon the issues involved. Even though the Constitution of Texas were so worded as not to invalidate this provision of the statute (the Amendment of 1915), its violation of the Fourteenth Amendment of the Constitution of the United States would be fatal to it. However, sections 17 and 19 of Article 1 of the Constitution of Texas are equally a bar to its validity. Rumbo v. Winterrowd, 228 S. W., 258; Miller v. Branch, 233 S. W., 1032.

In the so-called "Rent Cases," commissions are provided and a method of attempting to secure reasonable and fair rents. The Amendment of 1915 to our Texas statute, Article 5474, contains no provision whatever for giving consideration to the differences in value of property or the property rights involved. Said amendment fixes an arbitrary standard. It does not provide for fair or reasonable returns or take into account the value of a piece of property, the improvements upon it, or its location. Thus it has the effect of taking one's property without due process of law, and depriving him of his property without compensation, in violation of the State and Federal Constitutions.

The Amendment of 1915 is an entirety, and in its entirety must be held void and of no effect. It leaves the original Article as it stood on the statute books since 1874 until the Amendment of 1915, unimpaired and in full force and effect. Therefore, our answer to the certified question is that the Amendment of 1915 to Article 5475, Revised Statutes 1911, (Article 5222, Revised Statutes 1925), is violative of the Fourteenth Amendment of the Federal Constitution and of Sections 17 and 19 of the Texas Constitution.