**In re Martin A. JOHNSON, Official Court Reporter.**

**No. 1132.**

Court of Civil Appeals of Texas, Corpus Christi.

June 30, 1977.

Rehearing Denied Aug. 31, 1977.

Bruce D. Viles, Wood, Burney, Nesbitt & Ryan, Corpus Christi, for appellant.

David M. Kendall, Jr., First Asst. Atty. Gen., Austin, Mark H. Giles, Stone, Berryman & Giles, Corpus Christi, James M. Whitten, Sinton, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit to determine the constitutionality of Article 2324 and/or the reasonableness of a court reporter's fee for preparing a statement of facts. The City of Ingleside as appellant objected to the charges made by the court reporter (pursuant to Article 2324). A hearing was then requested by the court reporter, Martin A. Johnson, who sought to have the trial judge approve his fee as being reasonable. The City answered claiming the statute was unconstitutional and in any event, the fee charged was unreasonable. From an order by the trial judge approving the court reporter's fee, the City has perfected its appeal to this Court.

This suit represents the third appeal to come before this Court arising out of a single non-jury trial held before the Judge of the 156th District Court. The original case styled *The City of Ingleside v. T. R. Stewart, d/b/a L & S Air Conditioning Company, Inc.*, was given our Cause Number 1111. The original case was an appeal by the City from a judgment of the trial court. This original case has heretofore been decided by this Court adversely to the City. The motion for rehearing in this original cause was overruled this day with written opinion (Reference is here made to our opinion on rehearing in Cause No. 1111 concerning the costs). Docket No. 1111 (Tex.Civ.App.—Corpus Christi March 31, 1977 not yet reported). Prior to the time that Cause Number 1111 was submitted, the City brought an original mandamus proceeding in this Court to require the official court reporter for the 156th Judicial District Court, to deliver the statement of facts in Cause Number 1111 to this Court. The court reporter refused to deliver the statement of facts until his fee for preparing the statement of facts had been paid in full and in advance. By writ of mandamus, this Court ordered the court reporter to deliver the statement of facts in controversy to us. See *City of Ingleside v. Johnson*, 537 S.W.2d 145 (Tex.Civ.App.—Corpus Christi 1976, no writ).

This particular appeal arose following the hearing before the trial judge to determine the reasonableness of the court reporter's fee. The City had, by written notice, objected to the amount of the court reporter's fee. The court reporter requested that the trial court approve his fee. A hearing was

set for May 4, 1976 pursuant to Article 2324. The City filed an answer, a plea in abatement and a motion for continuance. The latter two were denied. A full hearing was then held in which the trial court heard evidence. At the conclusion of the hearing, without ever viewing the statement of facts in question, the trial court approved the court reporter's fee of $1,991.00.

The City in its points of error 1–13 contends that the trial court erred in not finding that Art. 2324, Tex.Rev.Civ.Stat.Ann. (Supp.1976), was unconstitutional. We believe that there are four basic contentions under these points that merit our consideration and discussion. The City's first contention is that the statute is unconstitutional because it is an unlawful delegation to the judiciary of an exclusive legislative power to prescribe the fees, duties and compensation of public officials in violation of the Tex.Const. Art. II, §§ 1, 13, 19, Art. III, § 44. A second constitutional argument that is advanced is that the statute improperly delegates to the judiciary the exclusive legislative function of providing for the duties and fees of court reporters without providing for therein, legally sufficient standards or guidelines concerning said duties and fees. The City's third contention is that the statute violates both the Tex. Const. Art. III, §§ 35 and 56 and U.S.Const. Amend. XIV, because the statute is a special law incapable of uniform application throughout the State of Texas. The fourth constitutional argument is that the statute constitutes a legislative attempt to increase the jurisdiction of the Texas Supreme Court without so specifically stating in contravention of the Tex.Const. Art. III, § 35 and that such delegation of authority prevents a trial court from ruling on the reasonableness of the court reporter's fees before the Supreme Court actually exercises such power.

Whenever an attack on the constitutionality of a statute is presented for determination, we start with the presumption that such statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting the statute. *Texas State Board of Public Accountancy v. Fulcher*, 515 S.W.2d 950 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.); *Vernon v. State*, 406 S.W.2d 236 (Tex.Civ.App. —Corpus Christi 1966, writ ref'd n.r.e.). The burden rests on the individual who challenges the act to establish its unconstitutionality. *Robinson v. Hill*, 507 S.W.2d 521 (Tex.Sup.1974); *Smith v. Craddick*, 471 S.W.2d 375 (Tex.Sup.1971); *Texas State Board of Barber Examiners v. Beaumont Barber College, Inc.*, 454 S.W.2d 729 (Tex. Sup.1970). If a statute is capable of two constructions, one of which sustains its validity, the courts will give to it that interpretation which upholds the statute. *State v. Shoppers World, Inc.*, 380 S.W.2d 107 (Tex.Sup.1964); *Townsend v. State*, 427 S.W.2d 55 (Tex.Cr.App.1968); *Texas State Board of Public Accountancy v. Fulcher, supra.*

The City's first attack on Article 2324 is that the statute unlawfully delegates to the judiciary the exclusive legislative function of setting compensation for public utilities and officials. The pertinent sections of Article 2324 were amended by the 64th Legislature in 1975. Acts 1975, 64th Leg., p. 826, ch. 319. The section of the amended statute which the City now is attacking reads as follows:

"When any party to any suit reported by any such reporter shall desire a transcript of the evidence in said suit, said party may apply for same by written demand, *and the reporter shall make up such transcript and shall receive as compensation therefor a reasonable amount, subject to the approval of the judge of the court if objection is made thereto,* taking into consideration the difficulty and technicality of the material to be transcribed and the time within which the transcript is requested to be prepared. The original transcript fee charged shall pay for the original plus one copy of the transcript, and additional copies may be purchased for a fee per page not in excess of one-third (⅓) of the original cost per page. In addition such reporter may make a reasonable charge, subject to the

approval of the trial court if objection shall be made thereto, for postage and/or express charges paid; photostating, blueprinting or other reproduction of exhibits; indexing; and preparation for filing and special binding of original exhibits. Provided further, that in case any such reporter shall charge in excess of the fees herein allowed by the judge, whether by accident or design, he shall, on demand filed with the court, make refund of the excess to the party to which it is due. *Provided, however, that the Supreme Court of Texas under its rulemaking authority shall provide for the duties and fees of court reporters in all civil judicial proceedings, except as provided by law.*" (emphasis added)

It is the City's position that the language of Article 2324 which allows the court reporter to set his own rate of compensation subject to approval of the trial judge, allows the judiciary in effect to set compensation rates for officers of the court in violation of Art. II, § 1, and Art. III, § 44 of the Texas Constitution.

Art. II, § 1 of the Texas Constitution is the separation of powers clause which prohibits any of the three branches of government from exercising any power properly attached to the other branches of government.[1] Art. III, § 44 specifically provides that the legislature shall provide by law for the compensation of all officers, not provided for elsewhere in the Constitution.[2] Therefore, it is the City's position that since Art. II, § 1 prohibits the judiciary from exercising any power expressly granted the legislature and since Art. III, § 44 expressly provides that the legislature shall set the compensation of officers, Article 2324 is therefore unconstitutional because it attempts to delegate to the judiciary an express power reserved exclusively to the legislature.

The first question which we must answer that necessarily arises from the City's contention is what is the exact status of court reporter Martin A. Johnson?

Johnson is the official shorthand reporter for the 156th Judicial District of Texas. An official shorthand reporter is an official or officer of the State as that word is used in Art. III, § 44 of the Texas Constitution. See *Butcher v. Tinkle*, 183 S.W.2d 227 (Tex. Civ.App.—Beaumont 1944, writ ref'd w.o. m.); *Dunn v. Allen*, 63 S.W.2d 857 (Tex.Civ. App.—Dallas 1933, no writ). As an official court reporter, Johnson's base salary was set by the legislature in 1971 at $9,600.00 per annum. Art. 2326j–59, Tex.Rev.Civ. Stat.Ann. (Supp.1976). In addition, the legislature provided in 1972 that an official court reporter's salary could be increased a maximum of 10% per annum. Art. 3912k, § 3(c), Tex.Rev.Civ.Stat.Ann. (Supp.1976). Based on these two statutes, according to the record, Johnson's salary has increased the maximum the last four years, to $14,-056.36 per annum, an increase of 46% over the last five years. In addition, Johnson receives additional compensation for transcribing and preparing records under Article 2324.

■ It is well settled that the legislature may impose a function upon the courts that is clearly judicial in nature. Tex. Const. Art. II, § 1. However, by reason of the separation of powers doctrine, the legislature cannot impose a function upon the judiciary that is legislative in nature. *State v. Southwestern Bell Telephone Company*, 526 S.W.2d 526 (Tex.Sup.1975). It is equally well established that under its inherent legislative powers, the legislature may delegate to a subordinate body the

1. § 1. Division of powers; three separate departments; exercise of power properly attached to other departments

Section 1. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

2. Sec. 44. The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, . . .

duty to administer and enforce its legislative functions. However, in so doing, the legislature must insure that the statute delegating such power is clothed with definite guidelines. *Wichita County v. Griffin*, 284 S.W.2d 253 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n.r.e.) (Court Reporter); *Burkhart v. Brazos River Harbor Nav. Dist. of Brazoria County*, 42 S.W.2d 96 (Tex.Civ. App.—Galveston 1931, no writ) (tax assessor).

■ So long then, as the statute is sufficiently complete to accomplish the regulation of the particular matters falling within the legislature's jurisdiction, the matters of detail that are reasonably necessary for the ultimate application, operation, and enforcement of the law may be expressly delegated to the authority charged with administration of the statute. *Commissioners Court of Lubbock County v. Martin*, 471 S.W.2d 100 (Tex.Civ.App.— Amarillo 1971, writ ref'd n.r.e.). This rule is particularly applicable where the legislature itself cannot practically and efficiently exercise the power that is permissibly delegated. *Trimmier v. Carlton*, 116 Tex. 572, 296 S.W. 1070 (1927); *Commissioners Court of Lubbock County v. Martin, supra.*

■ The test of the constitutionality of the delegation of power is whether the legislature has prescribed sufficient and adequate standards to guide the discretion conferred. *Moody v. City of University Park*, 278 S.W.2d 912 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.). The legislature delegated to the District Judges and County Commissioners' Court the power to set a court reporter's base salary. Article 2326j establishes a minimum base salary and Article 3912k established the maximum per annum raise. These statutes clearly set sufficient and adequate standards to guide the delegated authorities in setting the court reporter's salaries. The constitutionality of these statutes is not here challenged.

However, these two particular statutes were not the only delegation of authority that was made by the legislature in reference to the salaries of court reporters. The remaining delegation of authority arose out of Article 2324 wherein the legislature attempted to delegate to the trial court the authority to set the amount a court reporter may charge for making up a transcript of the testimony preparatory to an appeal. The legislature did this by allowing the trial judge, in effect, to approve the court reporter's fees where there was objection.

■ The question is whether or not the legislature has delegated its legislative function of setting compensation or has merely delegated the administrative act of carrying out the legislative rate setting functions. We answer these questions by holding that Article 2324 is unconstitutional in that it delegates to the judiciary the exclusive compensation setting function of the legislature in violation of Art. II, § 1 and Art. III, § 44 of the Texas Constitution.

". . . One of the most important tests in determining whether a particular law is an invalid delegation of legislative power is found in its completeness as it appears when it leaves the hands of the legislature. The generally recognized principle is that a law must be so complete in all its terms and provisions when it leaves the legislative branch that nothing is left to the judgment of the recipient of the delegated power. The rights, duties, privileges, or obligations granted or imposed must be definitely fixed or determined, or the rules by which they are to be fixed and determined must be clearly and definitely established, when the act is passed. The law must be perfect, final, and decisive in all of its parts, and the discretion that is given must relate only to its execution. If the legislature has prescribed sufficient standards to guide the discretion conferred, the power is not legislative and the delegation is lawful." 12 Tex.Jur.2d, Constitutional Law, Section 62.

In 16 C.J.S. Constitutional Law § 139, p. 635, it is stated:

"The legislature has no right to confer on the judiciary a power in terms so broad and meanings so vague that the application or nonapplication of the law

depends wholly on the individual opinion and predilections of the trial judge. . . ."

 There is no requirement that the legislature, in delegating its compensation setting powers, set exact maximum or minimum limits. *Commissioners Court of Lubbock County v. Martin,* supra. The delegation of authority must, however, prescribe sufficient standards to guide the discretion conferred. *Moody v. City of University Park,* supra. The delegating statute would be valid, even if setting general standards, if it spells out the limits of that discretion by the establishment of some standards capable of reasonable application. *Moody v. City of University Park,* supra. What the delegating statute must do is establish sufficient guidelines to prevent arbitrary and unequal application of the fees to be charged.

The guidelines or limitations set out in Article 2324 are:

"(a) . . . reasonable amount subject to the approval of the judge of the court if objection is made thereto, taking into consideration the difficulty and technicality of the material to be transcribed and the time within which the transcript is requested to be prepared."

Based on the above test, the standards established in Article 2324 are entirely too subjective to prevent arbitrary and unequal fees from being charged. This article allows the court reporter and judge absolute discretion to set the rate charged subject only to the "difficulty and technicality of the material and the time within which the transcript is requested to be prepared." To begin with, if no objection is made to the fee charged, a court reporter is, in effect, given legislative sanction to charge whatever he may feel the traffic will bear and as such is open to many and varied abuses. This charge could be based on any number of factors including the willingness or the ability of an appellant to pay. When objection to the fee is made, the only guideline given to the trial judge is that of "reasonableness." "[The word] 'reasonable' has had many definitions by the courts and its

meaning is shaded and varied by the context in which it is used, it is a relative term and the facts of a particular controversy could affect its meaning, frequently it is used to mean just, fair, honest or equitable." *Le Cuno Oil Company v. Smith,* 306 S.W.2d 190 (Tex.Civ.App.—Texarkana 1957 writ ref'd n.r.e.) cert. denied 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed.2d 1147 (1958). One could say that the judiciary of this State is familiar with the term "reasonable" and is quite capable of applying the reasonable standard to a given fact situation. But this is not what was contemplated by the framers of our Constitution.

The subjective standards for determining the correct amount of the fee has no relationship to the actual costs incurred by a court reporter in preparing the record. The "time requirement" guidelines are far too indefinite. A diligent appellant could presumably obtain his record in a shorter period of time and at a correspondingly lower cost. A busy reporter could justify a higher fee than another court reporter that is not so busy. A court reporter's liberal extensions of time to transcribe the record might come at a premium and ultimately determine the cost of the record. What relationship do the standards of difficulty and technicality have to the court reporter's actual costs? In our opinion, very little, if any. What might be difficult and technical to an inexperienced court reporter may be a simple and routine matter for another. Where one court reporter might spend 50 hours and incur "X" amount of expense in preparing a transcript, another court reporter may well be able to prepare the same transcript in 10 hours and for "Y" amount. Rapid advancement in technology and the use of electronic equipment may become the deciding factor when it concerns "time", "technicality" and "difficulty".

In most instances the cost for preparing a transcript of the record varies from one court reporter to another based on the location of their courts, their particular expertise and experience, and the type of equipment they employ. The wide range of costs chargeable can be justified by the court

reporter (where no objection is made) by the use of the present statute. However we do not view the purpose of the statute as one to accommodate only the court reporters. The purpose for such a statute is not only to provide uniform compensation to the court reporters across this State, but to assure litigants of the availability of a transcription of the record and to allow such litigants a uniform cost to proceed through the appellate process.

The current trend or recommended national standards for transcripts of records indicates the following:[3] elite type should be used; that typing should include 12 letters per inch on 8½" × 11" paper with 25 lines per page; a 1¼" left margin and a ½" right margin; and that the type begin 1" from the top of the page. The standardized features also include no indentions for questions and answers or only a five space indention for questions and answers with no other indentions. Johnson's record on the other hand, was typed on what is known as "expanded pica." It contains only 9½ letters per inch as opposed to the standard pica type of 12 letters per inch. This record also contains a left margin of 2½ inches and is centered in the page with ¾" margins top and bottom. It contains indentions of 14 spaces to indicate a new speaker. Based on the national standard, an average transcript should be able to contain a maximum of approximately 400 words per page on a full page. A full same size page of one of Mr. Johnson's records can contain only a maximum of 262 words per page. Mr. Johnson's record falls far below the national standards. In fact, the most complete page we could find in the transcript is on page 75 and it contains approximately 233 words while page 684, contains only 41 words.

The national trend is to fix court reporters' rates on a per page basis and on a fixed average number of words per page. No such guideline is set in Article 2324. The statute simply fails to establish any objective basis for the trial judge to determine what would be a reasonable charge. We do not propose the guidelines herein mentioned since this is strictly a legislative power subject only to review by the judiciary. *State v. Southwestern Bell Telephone Company, supra.* What we are saying is that if the legislature is going to enact a statute which regulates the charges of court reporters and at the same time delegate away the duty of fixing that rate, they must establish some objective standards by which the cost can be determined. Absent such guidelines, the statute is unconstitutional.

The City's next constitutional argument is that Article 2324 violates Art. III, §§ 35 and 56 of the Texas Constitution and the 14th Amendment to the U.S. Constitution because the article is a special law incapable of uniform application throughout the State. Art. III, § 56 of the Texas Constitution prohibits the Legislature from passing any local or special laws on certain enumerated subjects. Art. III, § 35 of the Texas Constitution provides that no bill shall contain more than one subject, which shall be expressed in its titles and if any subject that is embraced by the bill and such is not expressed in the title, the bill is void as to that subject. The scope of the 14th Amendment to the U.S. Constitution as it applies to due process need not be specified here.

It is the City's argument that by failing to specify objective standards for the assessment of fees of official reporters, the statute is incapable of uniform application throughout the State. The City further argues that the statute could operate in such a way as to nullify the right of appellate review in some cases because it grants to the trial judges sufficient discretionary power to allow them to approve a court reporter's fees in amounts so high that some litigants would be unable to appeal. The opposite could also be true if a trial

3. Greenwood & Dodge, Management of Court Reporting Services, 1 State Ct. J. 12, Winter 1977. This article is the result of a study funded by the Culpeper Foundation and the Law Enforcement Assistance Administration and is a summary of the actual study. Copies of the entire report may be obtained from the Publications Department, National Center for State Courts, Suite 200, 1660 Lincoln Street, Denver, Colo. 80203.

judge would only approve a very small amount as "reasonable", forcing a court reporter to do his outside work at a fee much lower than that being received by other court reporters in Texas.

There are two classes affected by Article 2324. These classes are official court reporters and the litigants who are required to pay a fee for the transcription of the testimony. Such as it is, Article 2324 operates at the outset (where no objection is raised), uniformly on all official court reporters. The same is not true, however, of the statute's operation on the litigant who is seeking to obtain a transcript from the official court reporter. Under Article 2324, a litigant is subject to paying different amounts for the same transcription depending on the court and county involved. The reality of this possibility is demonstrated by the record now before us. Johnson testified that he charged $2.00 per page and $.50 to reproduce exhibits. The official court reporter for the 28th District Court testified that he charged $1.80 per page and $1.00 plus the cost of preparation for each exhibit. He volunteered that the official court reporter for the 117th District Court was charging approximately $1.60 per page. Presuming that each of these court reporters were charging a reasonable sum, the cost variance between the high and low would amount to a substantial amount of money on a large record. The official court reporter for the 28th District Court stated, in effect, that each reporter charged what he felt his work was worth. In another case now pending before this Court (in which we take judicial knowledge)[4] an appellee filed a motion for an additional cost bond because the original cost bond was insufficient to cover the court reporter's fee. The court reporter's affidavit attached to the motion, states that he first estimated that the cost to transcribe the particular record at $1200.00. After completion of the statement of facts the court reporter advised the appellant's attorney that his fee was $1318.00 if payment was made then. The court reporter stated further that if payment was not made until after the outcome of the appeal, his fee would be $1757.00 for the same record. All of this demonstrates to us the availability of abuse under the present law because there is no uniform objective standard upon which the official court reporters are required to base their fees.

In his capacity as the "official" court reporter for the 156th Judicial District, Johnson, for all intents and purposes, enjoys a monopoly in Aransas, Bee, Live Oak, McMullen and San Patricio Counties with respect to anyone who may desire an official transcription of the testimony from his particular Court. Therefore, Johnson can in effect, be characterized as a business affecting the public interest. *Munn v. Illinois,* 94 U.S. 113, 24 L.Ed. 77 (1876) approved by our Supreme Court in *State v. Southwestern Bell, supra:*

> "Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created."

Under this test, Johnson's rate of compensation for transcribing the record is a form of "rate making" of fees or charges for a professional service. Under Article 2324, this "rate making" function was delegated, first to the court reporter himself, (an officer of the court) and second to the trial judge if objection was made; both of whom are clearly members of the judicial branch of the government. If this is rate making, then such function belonged exclusively to the legislature and was a power the judiciary could not exercise under such circumstances. *Southwestern Bell Telephone Company v. State,* 523 S.W.2d 67 (Tex.Civ. App.—Austin 1975) modified and affirmed 526 S.W.2d 526 (Tex.Sup.1975); *Lone Star Gas Co. v. State,* 137 Tex. 279, 153 S.W.2d

---

4. *Wallace P. Woodruff, et al v. Lillie O'Bryant, et al,* our Cause No. 1210.

681 (1941); *Daniel v. Tyrrell & Garth Inv. Co.,* 127 Tex. 213, 93 S.W.2d 372 (1936).

■ Since the article is subject to unequal application to litigants due to the fact that the fee charged is subject to each individual court reporter's fee scale and the individual determination by each trial judge of what is a reasonable amount, the article is in violation of Art. III, § 56 of the Texas Constitution.

■ The City also argues that the article amounts to a violation of due process in violation of the 14th Amendment to the U.S. Constitution. It is the City's argument that under the current system a trial judge may approve such an exorbitant fee that he can effectively cut off a litigant's right of appeal. We recognize this possibility and agree that the potential for such abuse does exist under the current law. However, there is no showing in this case that the City of Ingleside has suffered the harm complained of in its argument. This fact is clearly evidenced by the fact that the City did appeal and that we have decided the merits of the City's appeal in Cause Number 1111.

The City's next constitutional argument centers on that section of Article 2324 which authorized the Supreme Court, under its rule making authority, to provide for the duties and fees of court reporters. It is the City's initial contention that this authorization by the legislature is void as an attempt to increase the jurisdiction of the Supreme Court without specifically mentioning such an increase in the title of the bill in violation of Art. III, § 35 of the Texas Constitution.[5] The City also argues alternatively that such authorization is void as it would be beyond the scope of the Supreme Court's rule making authority under Article 1731a. Additionally, the City argues that if the authorization by the legislature was in fact valid, then the trial court was without authority to rule on the reasonableness of a court reporter's fee until the Supreme Court exercises its rule making authority and sets forth proper guidelines.

■ Article 1731a, Tex.Rev.Civ.Stat. Ann. (1962) confers upon the Supreme Court full rule making power in civil proceedings and the power to make rules to govern the practice and procedure in civil actions. The record before us shows a certificate from the Clerk of the Supreme Court to the effect that the Supreme Court has not yet taken any action under the authorization provided for in Article 2324. Since the Supreme Court has not yet exercised any of the authority granted under Article 2324, or under Article 1731a where it concerns the fees of court reporters, we need not make such determination here.

Without expressing any opinion as to whether or not the Supreme Court or the legislature should regulate the fees and practices of official court reporters, this Court would be amiss if we did not re-express our concern with the official court reporter system, as it exists today in this State. See *City of Ingleside v. Johnson,* supra. And see *Southwestern Bell Telephone Company v. Thomas,* 535 S.W.2d 686, 693, 694 (Tex.Civ.App.—Corpus Christi 1976) reversed on other grounds 20 Tex. Sup.Ct.J. 35 (June 11, 1977). A review of the cases filed in this Court since *Thomas,* in 1976 alone, reveals that in approximately 62% of the cases filed, (which included a statement of facts), a motion for extension of time was necessary before the record was complete. The overwhelming majority of these motions stated that the additional time required was to allow the court reporter time to complete his transcription of the record. The average extension requested was in excess of four weeks. Simply stated, over one-half of the appeals in this Court last year were delayed by at least one month due to the inability of official court reporters to prepare the transcript within the time specified by the Rules of Civil

5. Sec. 35. No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed.

Procedure. There is already considerable delay built into our judicial process which we cannot control. Where delay exists that could be eliminated, the legislature and the courts of this State have a duty to the citizens of this State, to remedy the problem. We have no way of knowing if this delay by the court reporter is related to this statute here involved, however, we do know that one of the "factors" to be considered is the "time in which the transcript is requested to be prepared".

■ The City in its 10th and 14th points of error complain of the action of the trial court in overruling its plea in abatement. It is the City's contention that since it had already perfected an appeal to this Court in the original cause involving the statement of facts in question, the trial court lost jurisdiction to make any further determination in that cause which included a determining of whether or not the fees charged by the court reporter were reasonable. We indicated to the City's attorney during oral arguments on both the mandamus action and in cause number 1111 that we believed that the manner in which the trial court had proceeded was proper. The hearing to determine the reasonableness of a court reporter's fees was a separate independent cause of action totally divorced from the cause in which the statement of facts was prepared. There were different parties and different issues. Any other interpretation of the statute would render it meaningless. As we pointed out in our opinion in the mandamus action, this Court had no jurisdiction to decide such questions under our narrow mandamus jurisdiction. We must presume that the trial court also realized we had no jurisdiction over such questions when it overruled the City's plea in abatement. The City's points of error 10 and 14 are overruled.

■ In its 15th and 16th points of error, the City, by no evidence and insufficient evidence points of error, attacks the implied findings of the trial court which support its order that $1,991.00 was a reasonable compensation for Martin Johnson for preparing the transcript in question. Because of our holding herein it is not necessary for us to consider these points. If we were to reach these points, we would overrule the no evidence point and sustain the insufficient point. Reviewing all the evidence, as we must do on an insufficiency of the evidence question, a serious doubt as to the trial court's findings is raised. The most serious problem raised by the evidence really concerns what the trial court refused to consider as opposed to what it did consider. As was previously stated, the trial court had the testimony of Martin Johnson to consider as to the length, format and contents of the statement of facts in question. However, she also had available to her the actual statement of facts which the City attempted to introduce into evidence, but the same was rejected by the judge. This Court, in reviewing both the testimony of Mr. Johnson and the statement of facts in question, has discovered some major discrepancies between Johnson's testimony concerning the form of the statement of facts and its actual form. For example, Mr. Johnson testified that the statement of facts in question averaged between 200-250 words per page. Our review of the statement of facts indicates it averages somewhat less than 200 words per page. Had Mr. Johnson's testimony been the only evidence tendered to the trial court of the form of the statement of facts, then she obviously would have been justified in relying on said testimony. But this was not the case. The actual statement of facts, which is contradictory to Johnson's testimony, was tendered to the trial court and was admissible for the purpose for which it was tendered. Yet it was rejected by the trial court and was not used by her to determine whether or not Johnson's fees were reasonable. This action constituted an abuse of discretion by the trial court and was error. The most valuable evidence of whether the fee for the statement of facts was reasonable was the record itself. In reviewing all the evidence we find other evidence that was introduced which showed that Johnson's fee was not reasonable. We find, in any event, that the trial judge's finding of reasonableness was not supported by sufficient evidence to sup-

port the trial court's order. Point of error number 16 is sustained.

██ The only question remaining before us is what is to be the disposition of this lawsuit? As a general rule, if a statute is unconstitutional, it amounts to nothing and accomplishes nothing and is no law at all. *Colden v. Alexander,* 141 Tex. 134, 171 S.W.2d 328 (1943); *Miller v. Davis,* 136 Tex. 299, 150 S.W.2d 973 (1941). Such a statute leaves the question that it purports to settle just as it was prior to its ineffectual enactment. 12 Tex.Jur.2d Constitutional Law § 46 (1960). See *Genzer v. Fillip,* 134 S.W.2d 730 (Tex.Civ.App.—Austin 1939, writ dism'd jdgmt. cor.).

██ However, we are not dealing with all of Article 2324 in this case. Article 2324 contains three paragraphs. The first paragraph sets out the duties of a court reporter during the trial. The second paragraph sets out the court reporter's responsibility and duties with respect to his shorthand notes. It is only the third paragraph of this article that we hold to be unconstitutional. An exception to the above stated general rule is the rule that if part of an act is invalid, it does not destroy the entire act unless the invalid part is so intermingled with all parts of the act as to make it inseparable. *Sharber v. Florence,* 131 Tex. 341, 115 S.W.2d 604 (1938); *Empire Gas & Fuel Co. v. State,* 121 Tex. 138, 47 S.W.2d 265 (1932); *Vernon v. State,* 406 S.W.2d 236 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.); *Freeman v. Swan,* 143 S.W. 724 (Tex.Civ.App.—El Paso 1912, writ ref'd). If the constitutional and unconstitutional sections of the act may be separated, we must do so and not permit the invalid part to destroy the whole law. *City of Taylor v. Taylor Bedding Mfg. Co.,* 215 S.W.2d 215 (Tex.Civ.App.—Austin 1948, writ ref'd). Clearly, the first two paragraphs may be divorced from the third.

██ The remaining question now is what is the effect of separating the article into its constitutional and unconstitutional parts? This question was answered by *Culberson v. Ashford,* 118 Tex. 491, 18 S.W.2d 585 (1929), wherein it was held that when a statute, which overruled an earlier law, is unconstitutional, the effect of the invalidity is to leave the prior law in full force and effect. This means that paragraph 3 of the 1961 amendment to Article 2324 (the prior law) remains in effect. This will permit court reporters to charge $.30 per hundred words for preparing the original transcript of the testimony, and in addition, they may make a reasonable charge for postage, reproduction of exhibits, and other actual expenses.

Holding that that portion of Art. 2324, Tex.Rev.Civ.Stat.Ann. (set forth herein in this opinion) is unconstitutional and void, we reverse the judgment of the trial court and remand this case with instructions to the trial court to determine the costs of preparing the transcript of testimony in accordance with the guidelines set out in the third paragraph of Art. 2324 as enacted by the 57th Legislature in the 1961 Acts, p. 620, ch. 290, sec. 1.

Reversed and remanded.