

# THE ATTORNEY GENERAL
## OF TEXAS

January 8, 1990

JIM MATTOX
ATTORNEY GENERAL

Mr. Hilary B. Doran, Jr.          ·   Opinion No. JM-1134
Chairman
Texas Racing Commission               Re:    Right of appeal to the
P. O. Box 12080                       Texas Racing Commission by a
Austin, Texas    78711-2080           person  fined at  a  nonpari-
                                      mutuel racetrack, validity of
                                      regulation  of nonpari-mutuel
                                      racing, and related questions
                                      (RQ-1831)

Dear Mr. Doran:

     You have asked  whether the  Texas Racing  Commission's
proposed rules for  regulation of nonpari-mutuel  racetracks
were valid.  By a subsequent request,  you ask whether  the
commission should  hear  the appeal  of  a person  fined  or
suspended at  such  a racetrack.  Your  second question  has
arisen because a  trainer, fined at  a nonpari-mutuel  track
when his horse did not pass a post-race drug test, wishes to
appeal his fine and believes the commission might be  liable
to him in a civil suit.  We now address both questions.   As
the following discussion will explain, the rules for regula-
tion of nonpari-mutuel  racetracks are  invalid because  the
Texas  Racing  Act  does  not  contain  a  constitutionally
sufficient delegation  of  rulemaking  authority  for  those
tracks.  Our answer to the first question renders the second
question moot.

     The Texas Racing Act,  V.T.C.S. art. 179e,  establishes
the Texas Racing Commission, authorizes it to regulate race-
tracks involving  pari-mutuel wagering,  and sets  out  com-
prehensive guidelines for that regulation.  Attorney General
Opinion JM-1102 (1989); see Attorney General Opinion JM-1104
(1989).  Section 1.02 of the act states the purposes of  the
act:

          The purposes of this Act are to  encourage     ·
     agriculture, the horse-breeding industry, the
     horse-training industry, the greyhound-breed-
     ing industry, tourism, and employment ·oppor-
     tunities  in  this  state  related  to  horse
     racing and  greyhound racing <u>and to  provide</u>

> for the strict regulation and control of
> pari-mutuel wagering in connection with that
> racing. (Emphasis added.)

Section 3.02 grants regulation and rulemaking authority to the commission:

> [T]he commission shall regulate and supervise
> every race meeting involving wagering on the
> result of greyhound or horse racing. All
> persons and things relating to the operation
> of those meetings are subject to regulation
> and supervision. The commission shall adopt
> rules for conducting racing involving
> wagering and shall adopt other rules to
> administer this Act that are consistent with
> this Act. (Emphasis added.)

The commission has adopted rules for racetracks that do not conduct pari-mutuel wagering, citing section 3.02 of the act as authority. 14 Tex.Reg. 1364-65 (March 14, 1989). However, section 3.02 expressly authorizes the commission to promulgate rules and regulations only for racetracks that conduct pari-mutuel wagering. The legislative guidelines set out in article 179e relate to pari-mutuel wagering and its regulation. See, e.g., V.T.C.S. art. 179e, §§ 5.01-6.06, 7.01-7.10 (licensing provisions for tracks involving pari-mutuel wagering), 6.08-6.10 (allocating shares of pari-mutuel pools), 6.13 (requiring financial disclosure from licensees), 11.01-11.09 (wagering restrictions), 13.01-15.02 (providing penalties for misconduct or illegal conduct at or involving racetracks that conduct pari-mutuel wagering), 16.01-17.06 (requiring local and state elections prior to licensing of pari-mutuel tracks).

In Attorney General Opinion JM-971 (1988), we concluded that the Texas Racing Commission was not authorized to license persons subject to regulation at racetracks that do not conduct pari-mutuel wagering. The opinion, which primarily discusses the authority of the commission to classify and license pari-mutuel horse racing tracks, states that the commission has only those powers granted by statute expressly, or necessarily implied, and it may not enlarge on those express or implied powers. Attorney General Opinion JM-971, at 1. The opinion noted in passing that article 179e-4, V.T.C.S., extends the commission's regulatory powers to include racetracks that do not conduct pari-mutuel wagering, but held that the power to regulate does not include the power to license persons subject to regulation. Id. at 5.

After the issuance of Attorney General Opinion JM-971, the commission promulgated regulations for "registration" of nonpari-mutuel tracks. Registration is conditional: in order to register, a racetrack must either obtain prior approval from the American Quarter Horse Association or agree to follow the commission's regulations for nonpari-mutuel racetracks. 16 T.A.C. § 303.152.

The regulations that the nonpari-mutuel track must comply with in order to "register" with the commission include specific hiring and reporting requirements. For example, if not approved by the American Quarter Horse Association, a racetrack that does not conduct pari-mutuel wagering must provide commission-approved stewards, horse identifiers, observers, a veterinarian, and a test barn. Id. The track must test animals for the presence of drugs. Id. Race dates must be approved in advance, and a "condition book" must be delivered to the commission at least 10 days before each race meeting. Id. §§ 303.153, 303.155. Additionally, the rules for racetracks that do not conduct pari-mutuel wagering state that the commission may revoke the licenses of persons licensed by the commission (presumably under the regulations for pari-mutuel racing), exclude race animals from racing at pari-mutuel tracks, and revoke nonpari-mutuel registrations in case of violations. Id. §§ 303.156-303.158. The commission will consider a violation of the rules for nonpari-mutuel racetracks by a person who later applies for a license under the regulations for racetracks involving pari-mutuel wagering. See id. § 303.202(2).

Attorney General Opinion JM-971 stated that the commission had authority under V.T.C.S. article 179e-4 to regulate nonpari-mutuel racetracks, but that the power to regulate did not include "the power to require licenses from persons subject to regulation unless the legislature so provides." Attorney General Opinion JM-971, at 5. We now conclude that article 179e-4 as written does not even authorize the commission to require registration. Article 179e-4 does not establish any standards or guidelines for regulation, nor does it require that regulation of nonpari-mutuel tracks must be reasonable. Article 179e-4 reads, in its entirety:

> Any provision in this Act to the contrary notwithstanding, the Texas Racing Commission shall regulate all aspects of greyhound racing and horse racing in this state,

whether or not that racing involves pari-mutuel wagering.

Attorney General Opinion JM-971 dealt with three questions about the licensing of horse racing tracks. Only one of the questions related to racetracks without pari-mutuel privileges, and it could be answered without raising the issue of the constitutionality of article 179e-4. Your present question about the trainer's wish to appeal a fine received at a nonpari-mutuel track has caused us to look closely at this provision and to determine that it delegates legislative authority to the commission without adequate standards to guide its exercise of such authority. Article 179e-4 is therefore unconstitutional as violative of the separation of powers principle of the Texas Constitution, and the commission's rules for "registration" of tracks that do not involve pari-mutuel wagering are invalid. Tex. Const. art. II, § 1; see also id. art. III, § 1. Attorney General Opinion JM-971 is modified to the extent that it suggests that article 179e-4 authorizes the commission to regulate nonpari-mutuel racing.

Article II, section 1, which states the principle of separation of powers, provides as follows:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

The legislature may delegate rulemaking authority to an administrative agency such as the Texas Racing Commission. Housing Auth. v. Higginbotham, 143 S.W.2d 79, 87 (Tex. 1940). A valid delegation of authority does not require the legislature to anticipate every administrative condition and detail. Id.; see also Trapp v. Shell Oil Co., 198 S.W.2d 424, 438 (Tex. 1946). The law, however, must clearly express public policy and establish administrative standards and guidelines so that the agency has only to make rules to which the legislative policy applies. Higginbotham, supra, at 87; see also Med-Safe v. State, 752 S.W.2d 638, 640 (Tex. App. - Houston [1st Dist.] 1988, no writ). A legislative

delegation of rulemaking authority must also provide procedural protection for persons subject to those rules. Trapp, supra, at 439.

In Med-Safe, the court held that the delegations of regulatory power to the Department of Health to require and issue permits pursuant to the Solid Waste Disposal Act, V.T.C.S. art. 4477-7, §§ 3(a), 4(e), were constitutional. Med-Safe, supra, at 639-41. Those statutes included clear statements of purpose, guidelines, and definitions. See id. In Wininger v. Department of Human Resources, 663 S.W.2d 913 (Tex. App. - Fort Worth 1983, no writ), delegation of authority to the Department of Human Resources under the Child Care Licensing Act was held valid because chapter 42 of the Human Resources Code sets forth guidelines that the department must follow and provides for appeal of a department decision. Id. at 915; see also Oxford v. Hill, 558 S.W.2d 557, 560 (Tex. Civ. App. - Austin 1977, writ ref'd) (portion of Child Care Licensing Act held constitutional because it included specific standards and guidelines, such as provisions for immunization of children, inspection of child care homes, and licensing, "thereby overcoming any doubt implying vagueness or generality in the Act"). In Trapp, the supreme court held that legislative acts delegating to the Railroad Commission the duty to execute and enforce oil and gas conservation statutes and the power to regulate a business substantially connected with the public interest were valid because both public and private legal rights were protected by the statutes.

Texas courts have held statutes delegating authority to administrative agencies unconstitutional when the delegations are unclear, unlimited, or incomplete. In Texas Antiquities Comm. v. Dallas County Community College Dist., 554 S.W.2d 924 (Tex. 1977), the supreme court held section 6 of the Antiquities Code unconstitutional and rejected the argument that legislative power to delegate authority to state boards or commissions composed of experts should be unlimited. In re Johnson, 554 S.W.2d 775, 782 (Tex. Civ. App. - Corpus Christi 1977, writ ref'd n.r.e.), the court held that a statute delegating authority to judges to set court reporters' fees in a "reasonable amount" was unconstitutionally vague, and explained that a valid statutory delegation of authority must be complete. The court stated:

> One of the most important tests in deter-
> mining whether a particular law is an invalid
> delegation of legislative power is found in
> its completeness as it appears when it leaves
> the hands of the legislature. The generally

> recognized principal is that <u>a law must be so complete in all its terms and provisions when it leaves the legislative branch that nothing is left to the judgment of the recipient of the delegated power. The rights, duties, privileges, or obligations granted or imposed must be definitely fixed or determined, or the rules by which they are to be fixed and determined must be clearly and definitely established, when the act is passed.</u> . . . If the legislature has prescribed sufficient standards to guide the discretion conferred, the power is not legislative and the delegation is lawful (quoting 12 Tex.Jur.2d, Constitutional Law § 62). (Emphasis added.)

<u>Id.</u> at 781. In our opinion, the provisions of article 179e-4, V.T.C.S., fall short of this standard.

We think that the legislature intended to authorize the commission to regulate nonpari-mutuel racetracks when it enacted V.T.C.S. article 179e-4, and we do not question that intent. Attorney General Opinion JM-971; <u>see also</u> Attorney General Opinion JM-1102. However, the power delegated to the commission by the statute as it is written is so broad that it leaves all policy-making and rulemaking discretion to the commission. Without sufficient guidelines, such a delegation of authority grants the commission a law-making function and violates the Texas Constitution. <u>Moody v. City of Univ. Park</u>, 278 S.W.2d 912, 921-22 (Tex. Civ. App. - Dallas 1955, writ ref'd n.r.e.).

Article 179e and article 179e-4 were adopted as different sections of the same bill. <u>See</u> Acts 1986, 69th Leg., 2d C.S., ch. 19, §§ 1, 8, at 48, 76. Mindful of the rule that all sections of a bill enacted by the legislature should be read and interpreted so as to present a harmonious whole, <u>State ex rel. Childress v. School Trustees of Shelby County</u>, 239 S.W.2d 777 (Tex. 1951), we have considered whether article 179e-4 could be given an interpretation that would render it constitutional by reading it to incorporate the standards that article 179e imposes on the commission's exercise of authority to regulate pari-mutuel tracks. We have, however, rejected the possibility that article 179e-4 can be read as making the provisions of article 179e applicable to nonpari-mutuel racetracks as well as to tracks with pari-mutuel betting. Some provisions of article 179e are irrelevant to a racetrack that does not have pari-mutuel betting. <u>See, e.g.</u>, V.T.C.S. art. 179e, §§ 3.07(e), 4.05, 6.08, 7.01-7.10, 11.01-11.09.

An express statement of legislative intent is required before certain forms of regulation may be imposed on a private entity such as the licensing of nonpari-mutuel tracks at issue in Attorney General Opinion JM-971. Your question about the trainer's right to appeal his fine provides a good illustration of the difficulties inherent in a construction that would require the commission to decide which article 179e standards the legislature intended to apply to article 179e-4. The commission determined that it had authority to require nonpari-mutuel tracks to have commission-approved stewards to test horses for drugs, but that it did not have authority to hear a trainer's appeal from a fine and suspension imposed by the stewards when his horse tested positive for a prohibited drug. The commission is therefore placed in the position of deciding the limits of its authority over nonpari-mutuel racetracks. The constitution requires the legislature to make this decision, and to accompany its delegation of authority to the commission with some statement of these limits. This was neither accomplished in the language of article 179e-4 nor the language of article 179e. See Texas Antiquities Comm., supra, at 928 (statutory delegation of power is too vague when persons of ordinary intelligence must "guess at its meaning and differ as to its application").

We decline to answer your question about possible civil liability, because it involves issues of fact that cannot be resolved through the opinion process.[1]

Because we find that article 179e-4 is unconstitutional as written, and the rules promulgated pursuant to that article are void, we must address the effect of the

---

1. Section 14.03 of article 179e instructs the commission to require post-race drug testing of race animals and states that the "licensed trainer" of the animal is deemed by law to be responsible for seeing that no drugs or stimulants have been administered to the animal. The section also provides for disqualification of the animal, suspension of the person responsible for administering the drug, and right of appeal to the commission. Section 18.06 of article 179e further provides that the commission is not liable for any cause of action arising from good faith enforcement of the act. We have determined that article 179e rules and regulations apply only to racetracks that allow pari-mutuel wagering; therefore, these provisions for drug testing and appeal are not applicable in this case.

invalidity of article 179e-4 on the other portions of the act. Section 312.013 of the Government Code sets out the rule for construction of statutes that have been found to be partially invalid: the invalidity of part of a statute does not affect valid provisions of the statute that can be given effect without the invalid part unless the statute expressly provides that it is not severable. The Texas Racing Act does not expressly provide that invalid portions of the statute are not severable.[2] See Attorney General Opinion M-1190 (1972), at 4.

In In re Johnson, supra, at 787, a Texas court of appeals held that if the unconstitutional portion of a statute was severable from the rest, then the whole law should not be invalidated. The court found that one paragraph of V.T.C.S. article 2324 (now sections 52.046 and 52.047 of the Government Code), a three paragraph statute, was unconstitutional. The statute did not contain a severability clause. The court stated that declaring a part of the act invalid did not render the entire act void unless the two parts were so intermingled as to make them inseparable. Id. In our opinion, the provisions of the Texas Racing Act are not mutually dependent and can be separated. Article 179e-4 can be severed from the act without affecting the provisions of V.T.C.S. articles 179e through 179e-3.

## S U M M A R Y

Article 179e-4 of the Texas Racing Act, granting the Texas Racing Commission the authority to regulate racetracks that do not allow pari-mutuel wagering, delegates legislative authority without adequate standards and is therefore an unconstitutional delegation of legislative authority. Attorney General Opinion JM-971 (1988) is accordingly modified to the extent that it states that V.T.C.S. article 179e-4 permits the

---

2. We note that article 179e, section 17.06, V.T.C.S., provides that section 311.032 of the Government Code, the Code Construction Act, applies to the Texas Racing Act. We believe section 312.013, providing rules for construction of civil statutes, is the applicable law. Under either statute, the result is the same.

commission to regulate tracks that do not allow pari-mutuel wagering.

The provisions of V.T.C.S. articles 179e through 179e-3 are severable from the provisions of article 179e-4; therefore, articles 179e through 179e-3 are not affected by the invalidity of article 179e-4.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General